Commonwealth *v.* Emerich, Appellant.

Submitted March 22, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Michael J. Perezous*, and *Xakellis, Perezous & Mongiovi*, for appellant.

*Ronald L. Buckwalter,* First Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 19, 1973:

This is another one of those unfortunate cases where the police discover evidence which is sufficient to incriminate but is inadmissible at trial because it was procured as a result of a *defective search and seizure* warrant contrary to the constitutional rights of an accused guaranteed by the First, Fourth, Fifth and Fourteenth Amendment of the United States Constitution and the Constitution of Pennsylvania: *Kerr v. U. S.,* 374 U.S. 23 (1963), making Fourth Amendment rights under the United States Constitution enforcible against the states through the Fourteenth Amendment; *Benton v. Maryland,* 395 U.S. 784 (1969), making Fifth Amendment rights enforcible against the states through the Fourteenth Amendment: *New York Times v. Sullivan,* 376 U.S. 254 (1964), reiterating that First Amendment's rights are enforcible against the states through the Fourteenth Amendment.

The affidavit in this case, which is the only matter before us for consideration in determining its sufficiency for the issuance of the search warrant, contains the following information:

"1(a). That on or about the 9th day of January, 1970, Troopers Lapp and Wenzler, Pennsylvania State Police, Lancaster, Pennsylvania, served a search warrant at the residence of David Emerich and during the search they found one hash pipe and a plastic bag of marijuana seeds.

"1. On the date of 19, June, 1970, information received from a confidential informant who stated that David Emerich is in the business of selling marijuana and LSD and growing marijuana in the Millersville area.

166

"2. On the date of 25, September, 1970, information received from a confidential informant who stated that David Emerich goes to New York and New Jersey and gets large quantities of drugs to be sold in the Millersville area. Also stated that Emerich uses his own vehicle for said trips.

"3. On the date of 27, October, 1970, a quantity of marijuana was found in the front yard of the Emerich residence. Information received from Chief Henry Seigler, Millersville Police Department.

"4. On the date of 27, October, 1970, a quantity of marijuana was found under a tree near the Emerich residence. Information received from Chief Henry Seigler, Millersville Police Department.

"5. During investigation of the two above incidents, Chief Seigler learned that on this date of 26, October, 1970, there was a suspected pot party at the Emerich residence, and that there were many hippie-type persons in attendance and that some of the hippies were running around in the yard. One of these hippies was observed carrying a plastic bag similar to the one found containing marijuana.

"6. On the date of 10, November, 1970, confidential informant stated that David Emerich is setting up a Mod Apparel Shop, and that he was going to use this shop as a front for his drug selling business.

"7. On the date of 29, October, 1970, information received from a confidential informant who stated that David Emerich is a dealer in narcotics and that he sells all types of narcotics.

"8. Information received from a confidential informant who stated that on the weekend of 17, October, 1970, David Emerich went to the state of Indiana to pick up a large quantity of drugs.

"9. Information received from a confidential informant who stated that David Emerich, on the week-

end of 24, October, 1970, went to the state of New York to pick up a quantity of drugs.

"10. Information received from a confidential informant who stated that David Emerich is now keeping his narcotics at his residence as he has made the statement that he is no longer afraid of being arrested by the police.

"11. A known narcotics dealer has told this officer that David Emerich is a dealer of narcotics in the Millersville area.

"12. Numerous complaints have been received from numerous confidential informants who have furnished information in the past which has aided in numerous police investigations that David Emerich is considered a large dealer of narcotics and drugs in the Millersville area, and that David Emerich is also involved in a bookmaking operation at his residence with two other individuals known as Arena and Lampy.

"13. A confidential informant stated that David Emerich has in his control a quantity of marijuana and other drugs that he was going to offer for sale at his residence and at his business establishment that he was going to open in the Millersville area. Said establishment was not opened due to a conflict of parking availability with the Boro Authorities.

"W. No. 1 informant is a proven reliable informant who had aided the police in prior investigations. He has furnished information in the past that has led to the arrest of two persons for bookmaking who subsequently pled guilty. He also furnished information that led to a successful investigation involving a burglary. This officer believes this information obtained from him is true and correct due to confirmation by other informants and investigations made by this officer concerning David Emerich.

"X. Nos. 2, 8, 9 and 10 informant has not furnished information in the past but is a respectable

businessman and this information received from him is believed to be true and correct through confirmation by other informants and investigations made by this officer.

"Y. No. 6 informant has not furnished information in the past, but is a highly respectable person with a large degree of responsibility to the citizens of the Commonwealth. This officer believes this information to be true and correct due to confirmation from other informants and through investigations made by this officer.

"Z. Nos. 7, 11 and 13 informant has not been used in the past, but his information is believed to be true and correct as he is involved in drug abuse and speaks with authority concerning suspected drug sellers. This information corroborated by other informants and investigations."

In *Commonwealth v. Milliken*, 450 Pa. 310, 313 (1973), the Supreme Court of Pennsylvania said: "When the officer's belief that the suspect has the fruits or evidence of a crime is based upon an informer's 'tip' rather than upon the officer's personal knowledge or observation, the officer must have two types of information before probable cause is established. First, in order to assure that the 'tip' is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect possessed the fruits or evidence of a crime. Second, in order to reduce the possibility that a 'tip' meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the 'tip' was reliable. Spinelli v. United States, 393 U.S. 410, 415-16, 89 S. Ct. 584, 588-90 (1969); Aguilar v. Texas, 378 U.S. 108, 114-15, 84 S. Ct. 1509, 1514 (1964); Commonwealth v. Matthews, 446 Pa. 65, 70, 285 A. 2d 510, 512 (1971)."

The affidavit in the instant case is a huge husk of allegations, but unfortunately, contains no kernel of "underlying circumstances" from which the issuing magistrate could be satisfied that the informers possessed reliable information to support the charges they were making against the defendant. The affidavit is sufficient in setting forth the credibility of the informant (Paragraphs W, X, Y, and Z) but lacks the necessary dependability of information necessary to sustain the issuance of the warrant. The closest approach to the test of reliability of information is found in Paragraphs 2, 3, and 4 of the affidavit, but even here the allegations fall short of sufficiency for there is no affirmative allegation that the affiant's source, Police Chief Henry Siegler, spoke with personal knowledge. For all that appears, in effect, is the Chief's belief or conclusion that there were narcotics in defendant's possession. The magistrate here certainly could not judge for himself the persuasiveness of the allegations of fact relied on to show proper cause (*Aguilar v. Texas,* 378 U.S. 108 (1964)). The allegations in the affidavit are conclusions and no facts of a substantiating nature are supplied. None of the informers saw defendant commit any illegal act; no one heard the defendant make a statement concerning his participation in a crime; none of the informers dealt with defendant personally; no information is set forth as to the source of the informants' information; no time is set forth as to when the information was received by the policeman. The mere fact that there are numerous informers does not obviate the necessity of supplying the underlying circumstances of the information given by any informer if that information is to be relied upon as probable cause for the issuance of the warrant.

An affidavit reciting that the affiant received reliable information from a credible person, and that affiant believed that narcotics were being kept at de-

scribed premises for illegal sale and use, is not sufficient to establish probable cause for the issuance of a search warrant since the affidavit states mere conclusions of an unidentified informant and contains no affirmative allegations that the affiant or the informer spoke with personal knowledge of the matters contained in the affidavit. *Aguilar v. Texas,* supra. Probable cause of the issuance of a warrant cannot be made by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. *U. S. v. Ventresca,* 380 U.S. 102 (1965).

It is well settled that ". . . a magistrate's determination of probable cause justifying the issuance of a warrant must be supported by an affidavit (and, if necessary, sworn testimony) that discloses the underlying circumstances from which the affiant has concluded that his information is reliable and that it must contain a statement of the underlying circumstances 'to enable the magistrate independently to judge of the validity' of the affiant's conclusion that the things to be seized are where he says they are." *U. S. v. Bailey,* 458 F. 2d 408, 411 (9th Cir. 1972). (Quoting from *Spinelli v. U. S.,* 393 U.S. 410, 413 (1969). See *Commonwealth v. Simmons,* 450 Pa. 624 (1973) for authorities.) The fact that defendant's home had been searched 10 months prior will not support the issuance of a search warrant based on probable cause, unless it is shown that the criminal activity continued up to or about that time of the issuance of the warrant (*Commonwealth v. Shaw,* 444 Pa. 110 (1971)).

From all the information supplied the magistrate, probable cause did not exist to believe that defendant was participating in the crime alleged against him in the affidavit. Accordingly, the trial court erred in failing to grant defendant's motion to suppress evidence.

The judgment of sentence is reversed and a new trial granted.

WRIGHT, P. J., and WATKINS, J., would affirm on the opinion of BROWN, J.