384 A.2d 945

COMMONWEALTH of Pennsylvania, Appellant,

v.

David Harry BALDWIN.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Susan Anne NEIDIG.

Superior Court of Pennsylvania.

Argued Sept. 15, 1977.

Decided April 13, 1978.

2

Louise G. Herr, Assistant District Attorney, Lancaster, with her D. Richard Eckman, District Attorney, Lancaster, for Commonwealth, appellant.

Samuel M. Mecum, Lancaster, Michael Jay Minney, and Glazier, Minney, Mecum & Kohr, Lancaster, submitted a brief for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This Commonwealth appeal[1] arises from an order of the court below suppressing evidence seized pursuant to a search warrant executed in the nighttime, and granting the defendants a new trial. The sole issue for our consideration is whether the trial court erred in its determination that no

---

1. It is well settled that the prosecution may only appeal an order granting a motion for new trial where the question involved is purely one of law. *Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977). Suppression of evidence is one such question; this appeal is therefore properly before us.

reasonable cause existed to justify the night search. For the reasons that follow, we hold that it did, and therefore reverse the order entered below.

On January 31, 1976, John Thompson, an attorney, telephoned the Pennsylvania State Police and informed Trooper George Taylor that, by the use of an extension telephone, he had just overheard several conversations between his son and appellee Baldwin concerning an impending sale of marijuana. Thompson related the information that Baldwin had possession of four pounds of marijuana that he had difficulty selling, and that Baldwin expressed a desire to sell some of the substance to the juvenile. The informant also gave a complete description of the juvenile, and stated that the sale would take place at Baldwin's residence at approximately 8:00 P.M.

Trooper Taylor and another officer then drove to Baldwin's residence, and at approximately 8:15 P.M., a car arrived and a juvenile answering the description given by the informant got out of the car and entered the residence. Within a few minutes, the juvenile came out of the apartment carrying a paper bag, got in the car, and was driven away. The officers followed, and stopped the car about one-half mile from the Baldwin residence. The driver of the vehicle consented to a search of the automobile, which yielded a paper bag containing approximately one pound of marijuana. Armed with this information, Trooper Taylor proceeded to the office of a District Justice, where he related the above information in an affidavit for a search warrant. The officer also stated in the affidavit that he had been informed by an undercover agent that Baldwin was a drug dealer, and he requested authorization for a nighttime search based on his belief that there was more marijuana at the Baldwin residence which could be sold or given away before morning. The magistrate issued a search warrant to be served day or night at about 1:00 A.M. The warrant was served on Baldwin shortly thereafter at his residence, and the ensuing search yielded 174 ounces of marijuana.

██ Baldwin and his co-lessee Neidig were thereupon charged with possession with intent to deliver a controlled substance. Pre-trial suppression motions were denied, and both defendants were found guilty by a jury. Following argument on post-trial motions, however, the trial judge issued an order suppressing all evidence seized pursuant to the search,[2] and granted a new trial. This appeal followed.

██ Pa.R.Crim.P. 2003(c) provides that "[n]o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." To date, our appellate courts have neither passed upon this provision of the criminal rules[3] nor interpreted the reasonable cause clause of subsection (c). The court below, however analyzed the reasonable cause standard of Rule 2003(c), and decided that reasonable cause is synonymous with the probable cause standard set forth in subsections (a) and (b). We disagree. The Rule is clear that probable cause is required for the issuance of a search warrant authorizing a daytime or nighttime search. However, due to the greater intrusion upon individual privacy occasioned by a nighttime search, some greater justification than that required for a daytime search must be shown. See Pa.R.Crim.P. 2003, comment (c). Put simply, the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning.

2. The trial judge originally ordered all evidence seized as the result of the search suppressed, and granted appellees' motion in arrest of judgment. After the Commonwealth filed its appeal, however, the judge rescinded his order and issued a new order suppressing evidence and granting appellees a new trial. The Commonwealth then discontinued its original appeal and appealed from the second order. We expressly disapprove this practice. See Pa.R.A.P. 1701. Nevertheless, we will consider the appeal as properly before us.

3. In *Commonwealth v. Doe*, 1 Pa.D. & C.3d 44 (C. P. Cumberland 1977) and *Commonwealth v. Doe*, 1 Pa.D. & C.3d 312 (C. P. Cumberland 1976), the suppression court properly perceived the probable cause reasonable cause distinction in Rule 2003(c), and suppressed evidence seized pursuant to warrants authorizing nighttime searches. However, the basis for the court's holding that no reasonable cause existed was the fact that the warrants had been issued in the daytime and not executed until nighttime, an element absent from the present case.

Examining the law of other jurisdictions for guidance, we find that the California Penal Code contains a good cause requirement for nighttime searches:

Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7:00 o'clock a. m. and 10:00 o'clock p. m.

Cal.Penal Code § 1533 (West) (1976).

In *People v. Govea,* 235 Cal.App.2d 285, 45 Cal.Rptr. 253 (1965), the First District Court of Appeal held that language in the affidavits stating that heroin sales occurred at night in private residences constituted a sufficient showing of good cause to justify a nighttime search, given the facts that prior sales occurred at night when the suspects were more likely to be on the premises.

Similarly, in *Galena v. Municipal Court,* 237 Cal.App.2d 581, 47 Cal.Rptr. 88 (1965), the same court found that the statement of probable cause in the affidavit also stated good cause for a nighttime search, in that it disclosed the existence of stolen goods on the premises, and set forth the fact that two persons having some connection with a portion of the contraband had just been arrested. In language particularly applicable to this case, the court said:

It is common knowledge that those in possession of contraband or stolen goods make every effort to effectuate its immediate disposition when they learn that persons connected with it have been apprehended by the authorities. 47 Cal.Rptr. at 95.

The California Supreme Court discussed the good cause requirement in *Solis v. Superior Court of Monterey County,* 63 Cal.2d 774, 48 Cal.Rptr. 169, 408 P.2d 945 (1966). In that case, where the affidavit related repeated night sales of heroin at defendants' premises, which were a known source of narcotics in the area, the court found good cause for a nighttime search. The court also relied on the facts that

heroin is the most dangerous of illicit drugs, and that heroin pushers are at least as active at night as during the day.

In *People v. Aguilar,* 240 Cal.App.2d 502, 49 Cal.Rptr. 584 (1966), the Second District Court of Appeal found good cause for a nighttime search based on the *Solis* rationale regarding the danger of heroin and the operation of heroin pushers at night, but also found that the magistrate did not abuse his discretion by authorizing execution of the warrant at night, because the premises were defendant's base of operations for nighttime heroin and marijuana sales.

Finally, in *People v. Mardian,* 47 Cal.App.3d 16, 121 Cal. Rptr. 269 (1975), the Second District Court of Appeal held that information in the affidavit that a controlled substance was stored on the premises and in the process of being moved elsewhere stated good cause for a nighttime search.

■ We wholeheartedly agree with appellees' citation of *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), for the proposition that reasonable justification should exist for a night search. Nevertheless, we think that the promulgation of Rule 2003(c) codifies this standard in the law of Pennsylvania, and that the standard has been satisfied in the present case. Trooper Taylor received reliable information from a citizen informant regarding the impending sale of marijuana, and subsequent police investigation verified the accuracy of this tip. The affidavit also stated that while four pounds of the substance were available for sale, only one pound had been sold, leaving three pounds available for disposal. Furthermore, the affidavit set forth appellee Baldwin's reputation as a drug dealer in the area. Most importantly, however, we are persuaded that the affiant's statement of his belief that other drugs could be sold or given away before the following morning falls squarely within the principle of *Galena* that once anyone connected with contraband is apprehended, the possessors of the contraband make every effort to dispose of it immediately when they learn of the apprehension. Although there is no evidence in this case that appellees knew that the minor purchaser had been apprehended shortly

8

after the sale, we are convinced that the very real possibility of obtaining such information before morning substantially contributed to establishing reasonable cause for a nighttime search.

Accordingly, the order of the lower court suppressing evidence and granting appellees a new trial is reversed, the jury verdicts reinstated, and the cases remanded for sentencing.

HOFFMAN and SPAETH, JJ., concur in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.