420 A.2d 1335

COMMONWEALTH of Pennsylvania

v.

**Walter A. PROKOPCHAK, Jr., and Helen Jean Prokopchak, Appellants.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed June 13, 1980.

George Goldstein, Pottstown, for appellants.

Chester B. Muroski, District Attorney, Wilkes–Barre, for Commonwealth, appellee.

Before PRICE, GATES and DOWLING, JJ.*

PRICE, Judge:

Following dismissal of pretrial motions to suppress physical evidence, Walter Prokopchak and Helen Prokopchak were tried before the Honorable Robert J. Hourigan and found guilt of possession of marijuana with intent to deliver[1] and simple possession of marijuana,[2] respectively. The court denied post–trial motions, and appellants take this appeal challenging the admission of physical evidence seized from their home under the authority of a search warrant that allegedly was issued without sufficient probable cause and was improperly executed. We are satisfied by the sufficiency of the facts alleged in the warrant affidavit and the procedures utilized by the officers conducting the search and, therefore, affirm the judgment of sentence.

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

The warrant to search appellants' home was granted on June 28, 1975, upon the following affidavit:

"I am trooper Thomas P. Baggott, of the Penna. State Police. I have been a member of the state police for over eight years and assigned to narcotic and drug investigation for over 2 years. During that time I have provided information which led to over 100 narcotic arrests and convictions. On 27 May, 1975 I was contacted by a confidential informant who told me that Walter PROK-OPCHAK is dealing in drugs and is a partner with one SHELDON MERTZ. The informant told me that PROK-OPCHAK made several trips during the month of May and returned with large amounts of marijuana. And that upon PROKOPCHAKs return MERTZ would come during the night and remove his share of the marijuana. On the seventh of June the informant contacted me again and advised that PROKOPCHAK had just made another trip and that MERTZ had already picked up his share. During the month of June surveillance was made of the Prokopchak home on various dates and vehicles belonging to MERTZ were observed at the home. On 25 June 75 the informant told me that PROKOPCHAK had gone on another trip and would return in three or four days with a large amount of marijuana. On this date [June 28, 1975] the informant contacted me and advised that PROKOP-CHAK had returned and was in possession of a large amount of marijuana. The informant stated that MERTZ would come late tonight or tomorrow and take his share. This informant has provided information in the past which has resulted in over 5 arrests and convictions and is believed to be true and correct. SHELDON MERTS [sic] is a suspected drug dealer and has been arrested in the past for delivery of marijuana. A night search is requested due to the fact that MERTZ may come during the night and remove some of the drugs. Such night time being after 10:00 P.M."

Having secured the warrant, Trooper Baggott assembled six other troopers to aid in its execution and they proceeded to

the home of Michael Prokopchak, appellant Walter Prokopchak's brother and a member of the Pennsylvania State Police, to allow him the opportunity to witness the search. He declined, and the six troopers continued on to appellants' house. Arriving sometime after 10:40 p. m., Trooper Gushka knocked on the back, front, and garage doors announcing that he was a police officer, but he received no response. The house was unlighted except for a light beside the garage door, and no noise emanated from the house.

The troopers returned to Michael Prokopchak's house to try to ascertain appellants' whereabouts. Michael called his father who came to Michael's home and informed the troopers that he believed his son was at a local restaurant. At the request of one of the officers, appellant's father called the restaurant and notified appellant that the police were at his home with a search warrant to look for drugs. Appellant's father told Trooper Gushka that appellant should be back from the restaurant in fifteen to twenty minutes. Immediately after receiving this information, at approximately 11:20 p. m., the detail departed once more for appellants' house.

They arrived a few minutes later and positioned themselves around the house. Trooper Gushka again knocked on the doors and announced himself to ascertain if anyone had returned, but still received no response. After waiting for thirty to thirty–five minutes, Trooper Gushka decided to enter the house by way of the front door. He made a last announcement of his identity and purpose and after a minute or so, at approximately 11:55 p. m., kicked the door in and entered. Appellant, Walter Prokopchak subsequently arrived at the house at 12:05 a. m., and his wife Helen arrived some ten minutes later.

Appellants first contend that the warrant was improperly issued because it was based upon unsupported statements by an unidentified informant. We find that the application stated sufficient probable cause for the issuance of the warrant.

■ It is well settled that the affidavit establishing probable cause for the issuance of a warrant need not reflect the affiant's personal knowledge or observations but may be based on hearsay information. *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826 (1976). The magistrate, however, must be presented with "sufficient information to justify the conclusion that a crime has been committed and that evidence or fruits of the crime may be found at the place to be searched." *Commonwealth v. Heyward*, 248 Pa.Super. 465, 467–68, 375 A.2d 191, 192 (1977). In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court set forth the standards against which the adequacy of an informer's report must be measured. The magistrate must be informed of: (1) the underlying circumstances from which the informer concluded that the suspect possessed the fruits or evidence of a crime, thus assuring that the tip is not mere unsupported rumor; and (2) the affiant's reasons for concluding that the informer is reliable, thus reducing the possibility that a tip meeting the first standard is merely a well–constructed fabrication. *See Commonwealth v. Emerich*, 225 Pa.Super. 163, 310 A.2d 390 (1973); *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973).

■ Appellant does not dispute that the second part of this two–prong test was met, but claims that the magistrate was not supplied with sufficient evidence of the underlying circumstances to show that the informer possessed reliable information to support the charges made. He correctly points out that the warrant application gives no indication as to how the informant acquired his information. Although this is one method by which the first requirement of *Aguilar*, a showing of the reliability of the information, may be met, the requirement may also be fulfilled if the informant has described the criminal activity in sufficient detail to indicate to the magistrate that he was relying on something more than casual rumor when he made the statements. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Commonwealth v. Hagen*, 240 Pa.Super.

444, 368 A.2d 318 (1976); *Commonwealth v. Samuels,* 235 Pa.Super. 192, 340 A.2d 880 (1975).

 In the instant case, the informer told the officer that appellant had made several trips in May and one just prior to June 7. He also reported that appellant was on a trip on June 25, assessed the date of his return, and reported its occurrence, which was within the time he had predicted. This information went beyond general allegations of activity and was specific in nature. Furthermore, in *Commonwealth v. Monte,* 459 Pa. 495, 329 A.2d 836 (1974), our supreme court held that when the affidavit for a warrant fails to specify the source from which the informant gathered the information conveyed to the police, the deficiency may be rectified by subsequent police surveillance that sufficiently corroborates the information. Police surveillance of appellants' home revealed that the cars of one Mertz, a suspected drug dealer who had been arrested for possession of marijuana, were often present.[3] From this it can be inferred that he was frequenting the residence, and this information tends to corroborate a tip of possession of narcotics and their location on the premises. *Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976). The role played by Mertz in receiving the drugs from appellant was also corroborated by his criminal record, which revealed prior criminal conduct similar to the offenses in question. These facts provide sufficient underlying circumstances to conclude that the informant's information was reliable.

 An affidavit for a warrant is to be tested by the court in a common sense and realistic manner and not subject to overly technical interpretations. *United States v.*

3. Appellant contends that since the application does not contain exact dates as to when the police observations occurred and when appellant took trips and returned with marijuana, the information was not sufficiently timely to support the warrant as required by *Commonwealth v. Eazer,* 455 Pa. 320, 312 A.2d 398 (1973). We disagree since some specific dates were alleged and the conduct all occurred within two months of the issuance of the warrant and was part of continuing criminal conduct and an ongoing investigation. *See Commonwealth v. Hagen,* 240 Pa.Super. 444, 368 A.2d 318 (1976).

*Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The magistrate's determination of probable cause is to be accorded great deference on review, *Commonwealth v. Frye,* 242 Pa.Super. 144, 363 A.2d 1201 (1976); *Commonwealth v. Williams,* 236 Pa.Super. 184, 345 A.2d 267 (1975), and all preference is to be exercised in favor of upholding the warrant, *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. Forster,* 253 Pa.Super. 433, 385 A.2d 416 (1978). We agree with the trial court that the present warrant was issued upon sufficient probable cause.

Appellants' second contention is that the warrant was issued in contravention of Pa.R.Crim.P. 2003(c) because there was insufficient probable cause for the authorization of a nighttime search. Rule 2003(c) states: "No search warrant shall authorize a nighttime search unless the affidavits show *reasonable cause* for such nighttime search." (emphasis added). The comment to this rule indicates that reasonable cause for issuance of a nighttime warrant imposes a stricter standard of justification than probable cause for a daytime warrant because of the greater intrusion into a citizen's privacy. Pa.R.Crim.P. 2003, comment c. Thus, we have required that the affidavit for a nighttime warrant "must show both probable cause and some reason why the search cannot wait until morning." *Commonwealth v. Baldwin,* 253 Pa.Super. 1, 5, 384 A.2d 945, 948 (1978). We find that there was a sufficient showing in this case to justify the issuance of a nighttime warrant.

█ The warrant application states that the officer had been informed that appellant had returned from a trip on the date of application carrying a large amount of marijuana and that Mertz would be coming that night or the next day to remove his share. We have already found that the information was sufficient to meet the tests of *Aguilar,* and this information certainly provides the urgency necessary to justify a nighttime search. In *Commonwealth v. Baldwin, supra,* we examined the standard required by Pa.R.Crim.P. 2003(c) and found it satisfied by facts indicating that marijuana was on the premises and was subject to impending

removal through sales. Although in that case a particular urgency was present because a minor purchaser had been apprehended, and therefore, those in possession were especially likely to dispose of the contraband should they learn of the arrest, these circumstances are not necessary prerequisites to establishing reasonable cause for a nighttime search. Indeed, some of the cases upon which the court relies in *Baldwin* indicate that circumstances showing imminent removal of controlled substances provide the necessary urgency to establish reasonable cause. *See also Commonwealth v. Burch*, 248 Pa.Super. 8, 374 A.2d 1291 (1977) (readily movable nature of drugs contributes to establishing reasonable cause).

Appellants' final contention is that the warrant was improperly executed because a forcible entry was made without reasonable justification since the police knew that the occupants, appellants, were on their way back to the house. They claim this violated their right to surrender voluntarily their privacy.[4] We disagree, and find that entry was properly accomplished.

■ Although Pa.R.Crim.P. 2007 is apparently directed at entry of premises in which the occupants are present at the time, it sets forth the general requirements for forcible entry in the absence of exigent circumstances: (1) announcement of identity, authority, and purpose; and (2) a reasonable period of time subsequent to the announcement for any occupant to surrender voluntarily his privacy. *Commonwealth v. Clemson*, 234 Pa.Super. 191, 338 A.2d 649 (1975); *Commonwealth v. Mazzella*, 231 Pa.Super. 247, 331 A.2d 784 (1974). At appellants' home, the state troopers made the proper announcement each time they approached the house and at the door. They made every effort to reach someone who could admit them to the premises, contacting both appellant's brother and father. Before making the

4. There is no dispute that searches conducted in the absence of the occupant are not, of themselves, unreasonable since Pa.R.Crim.P. 2008 provides the procedure to notify the absent occupant that a search was made.

entry, the troopers waited ten to fifteen minutes more than the time they had been informed it would take appellants to return. These circumstances amply demonstrate that appellants received every reasonable opportunity to surrender the premises. The actions of the police were reasonable as the delay was sufficient for them to form the belief that appellants did not intend to return and voluntarily relinquish the premises for the search.[5]

Suppression of the evidence seized as a result of the instant search was properly denied, and we affirm the judgment of sentence.

---

5. We also note that this court has no general supervisory or rule making powers on the basis of which an order directing the suppression of evidence, the relief sought by appellants, may be entered for the violation of the Rules of Criminal Procedure. *Commonwealth v. Jones,* 245 Pa.Super. 487, 369 A.2d 733 (1977).