Timothy Alan **BINGAMAN**, Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–88–295.

Court of Criminal Appeals of Oklahoma.

April 21, 1992.

Application for Publication Granted
May 29, 1992.

**424**

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant, Timothy Alan Bingaman, was convicted of Possession of Cocaine with Intent to Distribute, Possession of Marijuana with Intent to Distribute, Possession of a Weapon While Committing a Felony, Concealing Stolen Property and Possession of a Loaded Firearm, all of which were charged After Former Conviction of a Felony in Case No. CRF–87–1253 in the District Court of Oklahoma County. Following a two stage jury trial, Appellant was sentenced to serve terms of eighty-five years each for the two distribution charges, forty years for possession of a firearm while in the commission of a felony, sixty-five years for concealing stolen property and ten years for possession of a loaded firearm. Appellant has appealed raising a number of grounds of error, however, because we find one of the arguments dispositive of the case, we will address only that error.

Police were first summoned to Appellant's house by Appellant himself, who sought to have another man, Alan Beckman, removed from his property as a trespasser. During the afternoon following his arrest, Beckman told police that Appellant had some drugs in the house as well as a number of guns, including some semi-automatic weapons. Officer Regina Taylor prepared a search warrant after speaking to Beckman which she took directly to a judge's home, at about eleven p.m. to have

authorized. The warrant was then served at one in the morning.

Appellant alleges that the warrant which lead to the search of his home improperly authorized the search to occur during the nighttime. We held in *Wiggin v. State*, 755 P.2d 115, 116 (Okl.Cr.1988), that:

'Searches of the dwelling house' have always been the subject of close scrutiny because a 'nighttime search is sensitively related to the reasonableness' element contained in the Fourth Amendment. *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir.1979). Thus, many states, including Oklahoma, require the presence of special circumstances before the intrusion of a search may occur at night.

Our review of this allegation is directed by statutory language codified at 22 O.S. 1981, § 1230, which states:

The judge shall insert a direction in the warrant that it be served in the daytime, unless the affidavits be positive that the property is on the person, or in the place to be searched, and the judge finds that there is likelihood that the property named in the search warrant will be destroyed, moved or concealed. In which case the judge may insert a direction that it be served at any time of the day or night.

In order to obtain permission to serve a warrant in the nighttime, the statute clearly requires that the affidavits offered in support of the warrant must clearly establish not only that the evidence sought is at the place to be searched, but also that any delay may result in the loss of the contraband. This two pronged test is not met by the affidavit in the present case.

After speaking to Beckman, Officer Taylor prepared the following affidavit [1]:

I Officer Taylor the Affiant am a Police Officer with the City of Midwest City. I have approx. One Year and seven months experience in Law Enforcement. I have been assigned to Narcotic Enforcement for One Year and have made numerous Drug transactions. On 03–09087 I the Affiant talked with Allen Beckman a c/m

---

1. Spelling and punctuation are as in the original. nal.

who advised that on 03–08–87 in the afternoon he observed approx. Two ounces of a white crystal substance at the residence of 1720 Waltz Way where timothy Bingaman lives. Mr. Beckman further advised that he say a 9 MM Uzi Automatic weapon, and a mac–10 Machine gun at the residence, and a 9 MM handgun, and that there were numerous other stolen handguns and shotguns. On 03–06–87 at 9:00 P.M. Officers Ford and Taylor saw a Machine gun inside the house while on Surveillance at 1720 Waltz Way. Mr. Beckman has been living at 1720 Walt Way for a period of one week, and advises that the residence has a green one and a half ton Truck parked on the Roadway in front of the house, and the substance is often locked up in the right side tool box on the truck. Mr. Beckman further stated that all of these guns were loaded and some of the guns were located in Timothy Bingamans bedroom, and also located in the attic which is inside the garage, Mr. Beckman further stated that there are Five Pit Bull dogs, and they are trained to attack. Mr. Beckman further stated that Timothy Bingaman had the potential to use the guns he keeps at his house.

The warrant then notes that "Nighttime service is authorized because: The Narcotics are being sold very rapidly and may be gone by day break."

As we noted above, nighttime searches demand a heightened level of scrutiny due to the inherent level of intrusion on the personal rights of the owner of the home searched. In *Fletcher v. State*, 735 P.2d 1190 (Okl.Cr.1986) *overruled on other grounds; State v. Rhine*, 773 P.2d 762 (Okl.Cr.1989) we held that "Section 1230 requires that issuing judge to make a finding that property contained in the warrant will be destroyed, moved or concealed before he may exercise his discretion to authorize a nighttime search." *Id* at 1193. We reversed the conviction in *Fletcher* because we found that the affidavit offered in support of the warrant was wholly insufficient to substantiate a nighttime search. We find the same to be true in the present case.

We do not reach this conclusion lightly. We have searched not only the affidavit for justification of the nighttime search, but also the very extensive record submitted with the appeal. We do not find any testimony or other support for the conclusion that drugs were being sold "rapidly" out of Appellant's house. There is no testimony by any officer that Beckman even mentioned that drugs were being sold. Beckman merely told the officers that there were drugs in the house. Apparently, officers had watched the house on previous occasions, yet there was no evidence presented that any drug transactions had occurred.

Because the record is devoid of any evidence of necessity, we must conclude that the warrant in question was improperly served. The State urges us to find that the ordinary nature of drugs as easily destroyed is enough to justify the search. While it is certainly true that drugs may be transient in nature, we are not inclined to allow wholesale nighttime searches in any case where drugs are alleged to be involved. Such a broad standard would not be in keeping with the standards of the Fourth Amendment and could lead to widespread abuse. The standards required by Section 1230 are simple enough to met in the appropriate case yet strict enough to satisfy constitutional requirements.

Because we find that the search in question here was unlawful, we have no alternative but to REVERSE the convictions and REMAND the case for further proceedings.

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice Presiding Judge, concurring in result.

I concur in the results reached by the Court based on stare decisis. However, I continue to interpret 22 O.S.1981, § 1230 as delineated in my dissent to *Solis–Avila v. State*, 830 P.2d 191, 63 OBJ 1138, 1139 (Okl.Cr.1992). See also *Kay v. State*, 668

P.2d 1150, 1152 (Okl.Cr.1983). Section 1230 only requires a *finding* by the judge that it is likely the property will be destroyed, moved or concealed based on the totality of the evidence presented, not a pleading to that effect.