904 P.2d 886

STATE of Hawai'i, Plaintiff–Appellant,

v.

Martin B. RICHARDSON,
Defendant–Appellee.

No. 18277.

Supreme Court of Hawai'i.

Oct. 10, 1995.

**2**

Mark R. Simonds, Deputy Prosecuting Attorney, on the briefs, Wailuku, Maui, for plaintiff-appellant.

Tom Griswold, on the briefs, Wailuku, Maui, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Plaintiff-appellant State of Hawai'i (the prosecution) appeals from a circuit court order granting defendant-appellee Martin Richardson's motion to suppress evidence. For the reasons set forth below, we vacate the circuit court's order and remand for further proceedings.

## I. BACKGROUND

In January 1994, Maui Police Department (MPD) Officer George Kronoski was contacted by a confidential informant (CI) and told that a man named Bayani Gamit sold crystal methamphetamine at his residence in Wailuku, Maui. The CI also informed Officer Kronoski that Gamit had told him that he could purchase crystal methamphetamine at the Wailuku residence "anytime." The CI further explained that Gamit dealt the crystal methamphetamine between certain specified hours continuing at least until 2:00 a.m.,[1] "as well as during the early evening hours."

During February and March 1994, the CI made three purchases of crystal methamphetamine from Gamit at his Wailuku residence. The purchases were made under the supervision of Officer Kronoski and with money supplied by the MPD.

The prosecution thereafter applied to the district court for a search warrant. The warrant application was supported by an affidavit from Officer Kronoski recounting the information supplied by the CI and the details of the three supervised purchases. The application sought a warrant authorizing the search of Gamit's residence for crystal methamphetamine, United States currency, articles of identification, paraphernalia associated with the use/distribution of crystal methamphetamine, and records relating to the distribution of crystal methamphetamine.

At 1:30 p.m. on March 11, 1994, the district court issued a search warrant authorizing a search of Gamit's residence for the items enumerated in the application. The warrant gave authorization to search "within TEN (10) DAYS from the date hereof, but not between the hours of 2:00 o'clock A.M. and 7:00 A.M."

On the day the search warrant issued, at 10:25 p.m., Officer Kronoski searched Gamit's residence. The residence contained approximately six bedrooms and there were approximately eight people, including Richardson, in the house at the time the search was conducted. Officer Kronoski searched

---

1. The precise hours specified by the informant were contained in an affidavit presented to the judge who issued the search warrant. The full affidavit, however, was not made available to the defendant but was sealed in order to protect the CI from being identified.

all of the rooms but found contraband in only two of the rooms. In one of the rooms, Officer Kronoski discovered roughly 0.1 grams of cocaine, a glass smoking pipe, and Richardson's State of Hawai'i identification card.

Richardson was thereafter arrested and charged with, inter alia, one count of Promoting a Dangerous Drug in the Third Degree in violation of Hawai'i Revised Statutes (HRS) § 712–1243(1) (1985) and one count of Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329–43.5(a) (Supp. 1992).

On June 8, 1994, Richardson filed a motion to suppress all of the evidence recovered in the March 11, 1994 search, arguing that the "nighttime" [2] search of Gamit's residence was not properly authorized. On June 28, 1994, the circuit court entered an order granting Richardson's motion to suppress. Pursuant to HRS § 641–13(7) (Supp.1992), the prosecution timely appealed.

## II. *DISCUSSION*

[redacted] Rule 41 of the Hawai'i Rules of Penal Procedure (HRPP) regulates the issuance of search warrants. At the time the search warrant in the instant case was issued, HRPP 41(c) provided in pertinent part that "[t]he warrant shall contain a prohibition against execution of the warrant between 10:00 p.m. to 7:00 a.m.,[3] unless the judge permits execution during those hours in writing on the warrant."

In its conclusions of law in support of its order granting Richardson's motion to suppress, the circuit court interpret[ed] the language of Rule 41 to require that the issuing judge specifically authorize, in writing on the search warrant, execution between the hours of 10:00 p.m. and 7:00 a.m. in such a fashion as to ensure that there is no question that the issuing judge knew and understood that the warrant contained authorization for execution between the hours of 10:00 p.m. and 7:00 a.m. and that the authorizing judge had an ascertainable reason for permitting such authorization.

The prosecution contends that the circuit court's interpretation of HRPP Rule 41 was wrong. We agree.

[redacted] Although it would be good practice for judges authorizing nighttime searches to include a separate paragraph on the face of the warrant specifically acknowledging the deviation from the ordinary prohibition against such searches and setting forth the reasons therefor, HRPP Rule 41(c) only requires that "the judge permit[ ] execution during [nighttime] hours in writing on the warrant." In our view, the writing on the warrant in the instant case that prohibited the search between the hours of 2:00 a.m. and 7:00 a.m., thereby implicitly allowing the search between 10:00 p.m. and 1:59 a.m., satisfied the HRPP Rule 41(c) requirement. In this respect, we agree with the Delaware Supreme Court's analysis in *Hope v. State*, 570 A.2d 1185 (Del.1990). In *Hope*, the court held that, despite statutory language requiring that "authority [for the nighttime search] shall be expressly given in the warrant," 570 A.2d at 1187 (quoting 11 Del.C. § 2308) (brackets in original), "there is no requirement that a nighttime search warrant list

2. For purposes of this appeal, we construe the hours constituting "nighttime" as those specified in Hawai'i Rules of Penal Procedure (HRPP) Rule 41(c) at the time the search warrant in the instant case was issued, i.e., from "10:00 p.m. to 7:00 a.m." We do so because the only issue on appeal is whether HRPP Rule 41(c) was violated.

However, we recognize that "the time of a police search of an occupied family home may" also have constitutional significance. *See United States ex rel. Boyance v. Myers*, 398 F.2d 896, 897 (3d Cir.1968); *United States v. Smith*, 340 F.Supp. 1023, 1029 (D.Conn.1972); *see also United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir.1979) ("Rule 41, F.R.Crim.P. is a useful guide because it implements the essentials of the Fourth Amendment."); *but see Commonwealth v. Grimshaw*, 413 Mass. 73, 76, 595 N.E.2d 302, 304 (1992) ("Many courts have specifically or by implication rejected the claim that the nighttime search limitation has any basis in either State or the Federal Constitutions."). In a constitutional analysis, the hours specified in HRPP Rule 41(c) will not necessarily limit our definition of the term "nighttime."

3. The ordinarily prohibited search hours specified in HRPP Rule 41(c) were, by amendment effective June 1, 1995, changed to be "between 10:00 p.m. and 6:00 a.m."

4

exigent circumstances or contain a specific finding by the magistrate that probable cause exists to issue the nighttime warrant." *Id.* at 1188; *see also State v. Brock,* 294 Or. 15, 20–21, 653 P.2d 543, 546 (1982).

■ Our holding that the warrant satisfied the "writing" requirement of HRPP Rule 41(c) does not, however, establish that the judge's authorization of the nighttime search complied with the rule in all respects. HRPP Rule 41(c) contains a clear preference for daytime searches. Although judges have the discretion under the rule to authorize nighttime searches, we do not believe that the rule was intended to give judges unfettered discretion in this regard. Because HRPP Rule 41(c) does not expressly set forth the parameters of a judge's discretion, further analysis is warranted.

■ We begin by recognizing that nighttime searches, particularly of individuals' residences, are generally considered to be anathemas by our society. *See State v. Kalai,* 56 Haw. 366, 372, 537 P.2d 8, 13 (1975) ("Any official intrusion is necessarily an invasion of privacy, and the sanctity of the home is jealously guarded by the law. Nighttime searches are considered particularly abrasive, even when made pursuant to a judicially issued search warrant."); *cf. Gooding v. United States,* 416 U.S. 430, 462, 94 S.Ct. 1780, 1796, 40 L.Ed.2d 250 (1974) (Marshall, J., dissenting) ("In my view, there is no expectation of privacy more reasonable and more demanding of constitutional protection than our right to expect that we will be let alone in the privacy of our homes during the night."); *Monroe v. Pape,* 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting) ("Searches of the dwelling house were the special object of th[e] universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form."), *overruled by Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (overruling holding in *Monroe* that local governments are not "persons" within the meaning of 42 U.S.C. § 1983); *United States v. Smith,* 340 F.Supp. 1023, 1029 (D.Conn.1972) ("[I]ntrusion into an occupied home in the middle of the night is plainly a greater intru-

sion of privacy than entry during the day. A knock at the door is more alarming in the middle of the night and it is no less so because the officer knocking has a search warrant.").

For this reason, many jurisdictions require specific justification for the issuance of a search warrant that authorizes a nighttime search. For instance, in *Commonwealth v. Baldwin,* 253 Pa.Super. 1, 384 A.2d 945 (1978), the court explained:

> The Rule is clear that probable cause is required for the issuance of a search warrant authorizing a daytime or nighttime search. However, due to the greater intrusion upon individual privacy occasioned by a nighttime search, some greater justification than that required for a daytime search must be shown. Put simply, the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning.

253 Pa.Super. at 5, 384 A.2d at 948 (citation omitted). Similarly, in *Wiggin v. State,* 755 P.2d 115 (Okla.Crim.App.1988), the court stated:

> "Searches of the dwelling house" have always been the subject of close scrutiny because "a nighttime search is sensitively related to the reasonableness" element contained in the Fourth Amendment. Thus, many states, including Oklahoma, require the presence of special circumstances before the intrusion of a search may occur at night.

755 P.2d at 116 (citation omitted). *See also, e.g., People v. Acevedo,* 179 A.D.2d 813, 579 N.Y.S.2d 156, 157 (1992) ("In New York, a nighttime search for the purpose of seizing designated property or kinds of property is authorized only when the application alleges that the warrant: (1) 'cannot be executed between 6:00 A.M. and 9:00 P.M.,' or (2) the property to be seized 'will be removed or destroyed if not seized forthwith[.]'"); *State v. Weiss,* 155 Vt. 558, 564, 587 A.2d 73, 76 (1990) ("A nighttime search is justified where there is information presented in the search warrant affidavit that, absent a nighttime search, there is a danger that the evidence

sought will be disposed of." (Footnote, citation, and quotation marks omitted.)); *State v. Paul,* 225 Neb. 432, 435, 405 N.W.2d 608, 610 (1987) ("[I]n the affidavit there must be sufficient facts showing that the public interest requires nighttime service.").

In our view, the rationale of the above cases is persuasive. In addition, we agree with the following analysis of an Oregon statute that is virtually identical to HRPP Rule 41(c): [4]

> [The statute] requires that any search warrant be executed during the daytime unless the issuing judge authorizes a nighttime search.... The most obvious and fundamental policy of the statute is a legislative determination that execution of search warrants during the day is to be normal and that nighttime searches are to be exceptional.
>
> It is unlikely that the legislative intent in granting to judges the power to authorize exceptional searches was a grant of unbridled judicial discretion. Rather it appears to be a grant of judicial authority to permit exceptions only in accordance with the policy objectives of the legislation.

*Brock,* 294 Or. at 18, 653 P.2d at 545.

■ Thus, "[a]lthough there is no express requirement of a showing of special circumstances for a nighttime search indorsement, we conclude that such a requirement is implicit" in HRPP Rule 41(c). *See id.* at 17–18, 653 P.2d at 544 (footnote omitted). Accordingly, we hold that HRPP Rule 41(c) requires judges to have facts presented to them that demonstrate the existence of circumstances that would justify a nighttime search before issuing such a warrant. *Cf. Kalai,* 56 Haw. at 372, 537 P.2d at 13 ("a search warrant that is to [be] executed at night requires a showing of a somewhat higher standard than probable cause for its issuance"); *Coleman v. State,* 308 Ark. 631, 826 S.W.2d 273, 274 (1992) ("An affidavit for a search warrant must set out facts showing reasonable cause

to believe that circumstances exist that justify a nighttime search.").

■ The question then becomes: did the circumstances in the instance case justify a nighttime search? We recognize that "[i]t is difficult ... to anticipate all of the numerous factors that may justify the authorization of a nighttime search," *People v. Kimble,* 44 Cal.3d 480, 494, 749 P.2d 803, 810, 244 Cal. Rptr. 148, 156 (footnote omitted), *cert. denied,* 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988), and we will not attempt to enumerate them all here. We will, however, discuss some of the considerations relevant to this case.

■ Richardson contends that a nighttime search was not justified under the circumstances of the instant case because it was not necessary for the search to be conducted at night. Without question, one justification for a nighttime search is reasonable necessity. "A showing of such necessity would most commonly be based upon a justified 'apprehension that the evidence within the house would be removed, hidden or destroyed before morning,' but might sometimes be grounded upon other considerations." 2 La-Fave, *Search and Seizure,* § 4.7(b) at 266–67 (2d ed. 1987) (quoting *United States ex rel. Boyance v. Myers,* 398 F.2d 896 (3d Cir. 1968)) (footnotes omitted). Put another way, "[s]uch circumstances would exist where there is a reasonable possibility that the fruits, instrumentalities or evidence of crime sought would not be expected to be at the searched premises during the day or might be removed or dissipated if the search is delayed." *Brock,* 294 Or. at 20, 653 P.2d at 546.

Courts have found reasonable necessity to exist under a variety of circumstances. *See generally* Annotation, *Propriety of Execution of Search Warrant at Nighttime,* 26 A.L.R.3d 951 (1969 & Supp.1994).

For example, in *People v. Grant* (1969) 1 Cal.App.3d 563, 81 Cal.Rptr. 812; *People*

---

4. The Oregon statute provides:

Except as otherwise provided herein, the search warrant shall be executed between the hours of 7 a.m. and 10 p.m. and within five days from the date of issuance. The judge issuing the warrant may, however, by indorsement upon the face of the warrant, authorize its execution at any time of the day or night and may further authorize its execution after five days, but not more than 10 days from date of issuance.

Or.Rev.Stat. § 133.565(3) (1993).

v. *Aguilar* (1966) 240 Cal.App.2d 502, 49 Cal.Rptr. 584, and *People v. Govea* (1965) 235 Cal.App.2d 285, 45 Cal.Rptr. 253, the affidavits allege prior narcotics sales at night, thus implying that the contraband might not be there the next morning. In *People v. Walker* (1967) 250 Cal.App.2d 214, 58 Cal.Rptr. 495, the affidavit alleged that the defendant was not home during the day and frequently took the contraband with him. In *People v. Mardian* (1975) 47 Cal.App.3d 16, 121 Cal.Rptr. 269, the affidavit alleged that defendant was in the process of moving the contraband and would be leaving at 6 a.m. the following morning. In *Galena v. Municipal Court* (1965) 237 Cal.App.2d 581, 47 Cal.Rptr. 88, the easy disposability of the stolen contraband coupled with the arrest on that day of two persons connected with the contraband was held to be good cause for night service.

*People v. Watson*, 75 Cal.App.3d 592, 598, 142 Cal.Rptr. 245, 248 (1977). *See also, e.g., Paul*, 225 Neb. at 436, 405 N.W.2d at 611 (holding that nighttime search was justified because affidavit alleging that strong odor of burnt marijuana was emanating from residence supported an inference that marijuana was being consumed and thereby being destroyed); *Baldwin*, 253 Pa.Super. at 7–8, 384 A.2d at 948–49 (holding that nighttime search was justified based on affidavit alleging that, on the night of the search, defendant had been in possession of four pounds of marijuana and had sold one pound to another individual, and that the purchaser was apprehended by the police shortly after the sale).

▊ Although many of the cases in which reasonable necessity for a nighttime search has been found involve the sale or possession of illegal drugs, we do not intend to imply that nighttime searches are "necessary" whenever drugs are involved. For "[w]hile it is certainly true that drugs may be transient in nature, we are not inclined to allow wholesale nighttime searches in any case where drugs are alleged to be involved." *Bingaman v. State*, 832 P.2d 423, 425 (Okla.Crim.

App.1992). *See also State v. Rowe*, 806 P.2d 730, 733–34 (Utah App.1991) ("[W]e see nothing inherent in a narcotics search which would necessitate a search at night, even though circumstances can easily be imagined which would suggest the propriety of such a search being made at night." (Footnote omitted.)), *rev'd on other grounds*, 850 P.2d 427 (Utah 1992); *Watson*, 75 Cal.App.3d at 597, 142 Cal.Rptr. at 247 ("Because a night service of a warrant is a more serious invasion of the security of a home than a daytime service, the magistrate's exercise of discretion cannot be based solely on the nature of the contraband to be seized or the type of crime involved."); *cf. State v. Quesnel*, 79 Hawai'i 185, 191, 900 P.2d 182, 188 (Ct.App. 1995), and *State v. Garcia*, 77 Hawai'i 461, 470, 887 P.2d 671, 680 (App.1995) (holding that fact that drugs are alleged to be involved does not justify immediate entry of premises to execute a search warrant without the executing officer first declaring his or her office and business, demanding entrance, and waiting a "reasonable time" for the occupants to respond).

In the instant case, the affidavit in support of the warrant did not support a finding that a nighttime search was reasonably necessary. Although the affidavit indicated that sales of crystal methamphetamine took place at the Gamit residence until at least 2:00 a.m., the affidavit also revealed that transactions were conducted "in the early evening hours." If concern about the dissipation or removal of contraband from the Gamit residence were a primary consideration,[5] the search would be conducted at the earliest possible time. Because the search warrant was issued at 1:30 p.m. on March 11, 1994, the police had more than adequate time to execute the warrant during the early evening hours. There is nothing in the record to explain why the search could not either have taken place in the early evening hours of March 11, 1994, or have waited until the next day. Therefore, we hold that the affidavit did not establish

5. Given the fact that the police were aware of the presence of crystal methamphetamine at the Gamit residence for approximately a month before they applied for a search warrant, it is questionable whether they were particularly concerned about the dissipation or removal of significant amounts of drugs on the night of March 11, 1994.

that a nighttime search warrant was reasonably necessary.

On the other hand, a nighttime search warrant can be justified under circumstances other than those establishing reasonable necessity; such warrants may also be properly authorized when a nighttime search will not violate the policies that underlie the nighttime search prohibition.

One policy underlying the nighttime search prohibition is protection of the greater expectation of privacy that individuals possess in their homes at night. As Justice Marshall stated in his dissent in *Gooding v. United States*, "[t]he idea of the police unnecessarily forcing their way into the home in the middle of the night ... rousing the residents out of their beds, and forcing them to stand by in indignity in their night clothes while the police rummage through their belongings does indeed smack of a police state...." 416 U.S. at 462, 94 S.Ct. at 1796 (Marshall, J., dissenting) (quotation marks omitted).

In addition to these basic privacy interests, we recognize that "ordinarily a nighttime search would pose a heightened safety risk since people may tend to overreact to an entry by force in the dead of night. Darkness may exacerbate the reaction or heighten the confusion inherent in a search[.]" *Rowe*, 806 P.2d at 734 n. 5. Thus, the rule against nighttime searches also functions "to avoid the possibility of terror and gunplay which may arise from forcible nighttime entries[.]" *Brock*, 294 Or. at 19, 653 P.2d at 545. *See also Commonwealth v. Grimshaw*, 413 Mass. 73, 75,. 595 N.E.2d 302, 304 (1992) ("The underlying rationale [of the common law's hostility toward nighttime searches] was that nighttime police intrusion posed a great threat to privacy, violated the sanctity of [the] home, and endangered the police and slumbering citizens.").

Under some circumstances, nighttime searches will not encroach upon either the special privacy interests or the public safety concerns that underlie the nighttime search prohibition. For example, "[t]he reason for requiring specific authorization of night

searches and for the somewhat higher standard of proof for them imposed by Rule 41, namely, the peculiar abrasiveness of official intrusions at such periods, is wholly inapplicable to two unoccupied motel rooms with police officers stationed nearby to ensure that they remained as they were." *United States v. Ravich*, 421 F.2d 1196, 1201 (2d Cir.) (citation omitted), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). Other "[e]xamples of these circumstances might include searches of permanently lit areas (*e.g.*, airport baggage locker areas), places where people congregate during the day, but not at night (*e.g.*, supermarkets), or closed containers in police custody." *Brock*, 294 Or. at 20, 653 P.2d at 546. *Cf. United States v. Gibbons*, 607 F.2d 1320, 1327 (10th Cir.1979) (justifying nighttime search of trunk to be delivered by airline in part because search was "not one which intrudes into a home or is carried out by physically disturbing the owner or the person who has an interest in the personal property involved"); *Grimshaw*, 413 Mass. at 79–80, 595 N.E.2d at 306 (holding that suppression of evidence obtained during nighttime search not required where the persons whose home was searched "did not suffer the indignity of being roused from their sleep nor experience the fear generated by the police-state technique of the anonymous knock on the door in the dead of night").

In the instant case, the affidavit in support of the warrant indicated that sales of crystal methamphetamine were taking place until at least 2:00 a.m., thereby implying that the occupants of the home would neither be asleep nor surprised by a knock at the door until a later hour. "It was therefore reasonable to search the premises in the nighttime when, according to investigation and surveillance, prior sales had taken place and when the suspects were more likely to be on the premises and in possession of narcotics." *People v. Govea*, 235 Cal.App.2d at 299, 45 Cal.Rptr. at 262. Thus, we hold that the authorization for a search until 2:00 a.m. that was given in the instant case was justified because such a search would not conflict with the policies underlying the ordinary prohibi-

8

tion against nighttime searches.[6]

## III.  CONCLUSION

For the foregoing reasons, we hold that the specification on the warrant prohibiting searches between the hours of 2:00 a.m. and 7:00 a.m. satisfied HRPP Rule 41(c)'s requirement that "the judge permit[ ] execution during [nighttime] hours in writing on the warrant."  In addition, we hold that the authorization for a search until 2:00 a.m. was justified.  Accordingly, we vacate the circuit court's order granting Richardson's motion to suppress evidence and remand for further proceedings.

6.  Having held that the nighttime search warrant in the instant case was properly authorized, we need not address the prosecution's argument that improper authorization of a nighttime search warrant does not require suppression.  *Compare Brock*, 294 Or. at 22, 653 P.2d at 547 (holding that violation of statute governing issuance of nighttime search warrants does not require suppression) *with Rowe*, 806 P.2d at 739 (holding that "unmitigated violation" of statute governing issuance of nighttime search warrants requires suppression), *rev'd*, 850 P.2d 427.