418 A.2d 418

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph J. NYCZ.**

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed Jan. 11, 1980.

306

David E. Fritchey, Assistant District Attorney, Media, for Commonwealth, appellant.

James P. McHugh, Chester, submitted a brief on behalf of appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

The Commonwealth of Pennsylvania, Appellant here, has appealed an Order of the lower court suppressing bookmaking paraphernalia seized pursuant to a search warrant. The lower court determined that the information set forth in the affidavit of probable cause upon which the search warrant issued was "stale," and that is the single issue presented in this appeal.

Appellant has certified that the appeal involves a pure question of law and that the pre-trial Order of the lower court suppressing the physical evidence was effectively terminated or will substantially handicap the prosecution. We have reviewed the record of the suppression hearing below and find support for Appellant's position. Accordingly, we hear the appeal. *Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977); *Commonwealth v. Benjamin,* 260 Pa.Su-

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

per. 1, 393 A.2d 982 (1978); *Commonwealth v. Kunkel,* 254 Pa.Super. 5, 385 A.2d 496 (1978).

On May 5, 1978, immediately following a search of his person and his automobile, Appellee was arrested and charged with bookmaking. The search was conducted pursuant to a search warrant obtained from a District Justice the same day by a trooper of the Pennsylvania State Police, upon his affidavit. Following a preliminary hearing, Appellee was bound over for trial and an information was thereafter filed against him.

During the search, gambling paraphernalia was allegedly seized from Appellee including betting slips, and pre-trial, Appellee moved to suppress the fruits of the search. On October 23, 1978, following a hearing, the lower court suppressed all evidence seized in the search upon finding that the information contained in the affidavit for the search warrant was either "stale" or innocuous, and accordingly, the lower court concluded that no probable cause existed at the time the warrant issued.

I.

■ Appellant first contends that observations of Appellee made by a police officer on the day the warrant was issued, and the day before, support a finding of present probable cause. It is well settled that probable cause for the issuance of a search warrant must be established at the time the warrant is issued, *Commonwealth v. Conner,* 452 Pa. 333, 305 A.2d 341 (1973); *Commonwealth v. Simmons,* 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Hagan,* 240 Pa.Super. 444, 368 A.2d 318 (1976), and "stale" information will thus not support a finding of present probable cause. *Commonwealth v. Eazer,* 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Jackson,* 461 Pa. 632, 337 A.2d 582 (1975); *Commonwealth v. Albert,* 264 Pa.Super. 390, 399 A.2d 1106 (1979).

The standard by which we are guided in examining the affidavit underlying a search warrant is well stated in *Commonwealth v. Shaw,* 444 Pa. 110, 281 A.2d 897 (1971):

"In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued. *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968); *Schoeneman v. United States*, 317 F.2d 173 (D.C. Cir. 1963); and *Dandrea v. United States*, 7 F.2d 861 (8th Cir. 1925). See also IV Wharton Criminal Law and Procedure § 1546 (12th Ed. 1957), and authorities cited in 100 A.L. R.2d 525 (1965). If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity continued up to or about that time." *Id.*, 444 Pa. at 113–14, 281 A.2d at 899.

We turn then to an examination of the affidavit upon which the search warrant at bar was issued[1] and observe that it discloses the following:

"On 29 March 78 the Affiant received information from a confidential informant that he/she was placing horse bets usually daily with a W/M, Joseph NYCZ while at work at the Westinghouse Plant, Lester, Tinicum Twp., Delaware Co., Penna. Informant, on this date, also advised that he/she (informant) has witnessed several other workers place horse bets with Joseph NYCZ while at work at the Plant. Informant also advised Affiant that Joseph NYCZ leaves the Plant area at lunch approx. 1200 hrs to pick-up more horse bets at the Loop Restaurant, which is next to the Westinghouse Plant grounds at the intersection of Jansen & Powhatten Aves., Essington, Tinicum Twp, Delaware County, Penna.

1. In determining the existence of probable cause for the issuance of a search warrant, we are limited to the contents of the affidavit. Pa.R.Crim.P. 2003; *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973).

310

Confidential Informant has been reliable in the past having given Affiant information which has resulted in two gambling arrests and two convictions.

On 30 March 78 Affiant witnessed Joseph NYCZ operating a red/white Monte Carlo (Chev) Cpe. bearing Reg # L12783 pulling into the parking lot area of the Loop Restaurant and entering same. Affiant at this time entered the Loop Restaurant and while inside witnessed Joseph NYCZ speaking at separate times, with two W/M's and a B/M then writing on a piece of paper and accepting U.S. Currency from each. Time of this surveillance was approx. 1210 hrs. At approx. 1750 Affiant again met with Confidential informant who stated that he/she had placed horse bets with Joseph NYCZ while at work on this date.

At 1205 on 3 April 78 Affiant again witnessed Joseph NYCZ operating the red/white Chev cpe pulling into the parking lot of the Loop Restaurant and entering same. Affiant again entered the Loop Restaurant and while inside witnessed Joseph NYCZ speaking with two W/M's at different times then writing on a piece of paper and accepting U.S. Currency from each. At approx. 1645 hrs Affiant met with confidential informant who advised that he/she had placed horse bets with Joseph NYCZ while at work earlier on this date.

On 12 April 78 at approx. 1205 hrs Affiant again witnessed Joseph NYCZ operating the red/white Chev Cpe. and pulling into the parking lot of the Loop Restaurant and entering same. Affiant then entered the Loop Restaurant and while inside witnessed Joseph NYCZ speaking with one W/M then one B/M and after writing on a piece of paper accepting U.S. Currency from each. At approx. 1730 hrs Affiant met with the Confidential Informant who stated that he/she had placed horse bets with Joseph NYCZ while at work earlier on this date.

On 4 May 78 at approx. 1205 hrs Affiant was in the Loop Restaurant when Joseph NYCZ entered. While in this establishment Affiant witnessed Joseph NYCZ speaking with two W/M's then writing on a piece of paper and

accepting U.S. Currency from each. At approx. 1700 hrs this date Affiant met with Confidential Informant who advised that he/she had placed horse bets with Joseph NYCZ while at work earlier on this date.

On 5 May 78 at approx. 1155 hrs Affiant again witnessed Joseph NYCZ operating his re/white Chev Cpe and pulling into the parking lot of the Loop Restaurant and entering same. Affiant then entered the Loop Restaurant and while inside witnessed Joseph NYCZ speaking, at separate occasions, with three w/m's, then writing on a piece of paper and accepting U.S. Currency from each. At one time, while speaking with one of the W/m's Affiant overheard the W/M placing a $5.00 bet on tomorrows Kentucky Derby Race."

In brief summary, as is seen, on March 29, 1978, the affiant, a State policeman, received information that a confidential informant and others were placing horse bets with Appellee, usually on a daily basis. Acting upon that information, the affiant commenced a surveillance of Appellee and on March 30, 1978, April 3, 1978, April 12, 1978, May 4, 1978 and May 5, 1978, personally witnessed Appellee speaking with others, writing on slips of paper and then accepting money from each of the persons with whom he spoke.

Appellant contends that the personal observations of the affiant on May 4, 1978 and May 5, 1978 are alone sufficient "present" probable cause to support the warrant, without regard to the earlier observations. We agree.

It cannot reasonably be suggested that information a day or two old, as here, is "stale." *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979) (4 days); *Commonwealth v. Allen*, 227 Pa.Super. 157, 324 A.2d 437 (1974) (9 days); *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974) (9 days).

It only remains, then, to consider whether the observations of the affiant made on May 4 and May 5, 1978 constitute sufficient probable cause upon which to base a search warrant. In reaching our conclusion, we are guided

by two familiar principles. First, as the Supreme Court of the United States reminded us in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), when a magistrate has found probable cause to issue a search warrant, we should not, as a reviewing court invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a common sense manner. *Id.* at 109, 85 S.Ct. at 746, 13 L.Ed.2d at 689. Rather, we must test and interpret the affidavit in a realistic fashion, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. *Commonwealth v. Matthews*, 446 Pa. 65, 71, 285 A.2d 510, 513 (1971); *Commonwealth v. Forster*, 253 Pa.Super. 433, 437, 385 A.2d 416, 418 (1978).

Secondly, in determining whether an affidavit is sufficient to support a search warrant, we said in *Commonwealth v. Forster*, 253 Pa.Super. 433, 438, 385 A.2d 416, 418–19 (1978), quoting from *Commonwealth v. Frye*, 242 Pa.Super. 144, 148, 363 A.2d 1201, 1203 (1976); and *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645:

" 'We must further be mindful "that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); and that their determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)." '

At bar, the lower court considered the Defendant's conduct as observed by the affiant on May 4 and May 5, 1978 as

merely "suspicious" and not indicative of criminal behavior. Lower Court Opinion, reproduced in Appellant's brief at 23, saying in support of that conclusion:

". . . Specifically, defendant's midday trips to the . . . restaurant do not constitute evidence of continuing criminal activity. Many law-abiding citizens regularly leave their place of employment at the lunch hour and return to work. See *Commonwealth v. Eazer*, 455 Pa. 320 [324 n. 4] 312 A.2d 398 [400 n. 4] (1973)."

It may well be that innumerable law-abiding citizens take lunch at restaurants away from their places of employment, but common experience tells us that it is not all such law-abiding citizens who converse with luncheon companions, thereupon write on slips of paper and receive money from such persons. It must be remembered that the affiant was earlier advised by his informant that the Defendant was a bookmaker. With that foreknowledge, the affiant observed conduct on two consecutive days that would surely confirm the informant's information in the mind of a reasonable police officer, or a neutral and detached magistrate.

■ It must also be remembered that probable cause for the issuance of a search warrant exists when the facts and circumstances set forth in the affidavit are sufficient to warrant a person of reasonable caution to believe that the contraband to be seized is in the specific place described. *Commonwealth v. Stamps*, 260 Pa.Super. 108, 393 A.2d 1035 (1978).

■ Bearing in mind that standard, and that a determination of probable cause by the issuing authority is entitled to great deference by the reviewing court, and finally, that when we examine the affidavit we must understand that we deal only with probabilities that are not technical but are rather the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians act, *United States v. Harris*, 403 U.S. 573, 582–83, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723, 733 (1971), we disagree with the lower court and we find that the conduct of the Appellee on May 4, 1978 and May 5, 1978, as observed by the

affiant and included in the affidavit, was entirely consistent with that of one engaged in bookmaking. Viewed in the light of *Frye*, we therefore find the search warrant was based upon an affidavit which provided more than reasonable grounds to believe that the Appellee was engaged in criminal activity and that a search of his person and his automobile would uncover the trappings of his nefarious trade.

## II.

The Commonwealth also contends that the multiplicity of observations by the affiant, in combination with the information imparted to the affiant by his informant, commencing on March 29, 1978, and culminating on May 5, 1978, demonstrate an ongoing criminal enterprise.

As our Supreme Court said in *Commonwealth v. Eazer*, 455 Pa. at 324, 312 A.2d at 400:

".  .  . Evidence, to demonstrate continuing conduct, must establish actual continuity of the illegal enterprise. .  .  ."

And as Judge Hoffman noted in *Commonwealth v. Suppa*, 223 Pa.Super. 513, 302 A.2d 357 (1973):

"We do not mean to indicate that criminal activity occurring 16 days prior to the issuance of a warrant would in all cases be too remote for a valid warrant to issue. The nature of the criminal activity itself may serve as a reasonable basis upon which to conclude that the activity is continuing. In addition, where a series of illegal acts are observed over a period of time, this fact may serve as a sufficient basis from which to conclude that the activity is of a continuing nature.  .  .  ." *Id.*, 223 Pa.Super. at 515–16, n. 1, 302 A.2d at 358, n. 1.

The affidavit at bar reveals that on five separate occasions between March 30, 1978 and May 5, 1978, the affiant witnessed Appellee speaking with several persons, writing on pieces of paper, and then accepting money from each of the persons with whom he spoke. The affidavit also indicates that on four of those dates, the affiant's confidential

informant advised the affiant that he himself had placed bets with Appellee.

A common sense reading of the affidavit leads us to conclude that such conduct on the part of Appellee, more appropriately described as a "routine," clearly reflects an on-going criminal enterprise, the classic pattern of the book-maker as we have come to understand it. It follows, then, that observations occurring on March 30, 1978, April 3, 1978 and April 12, 1978 as set forth in the affidavit, are not "stale" and properly formed the basis upon which a valid search warrant issued.

We have thus determined that the affiant's observations made on May 4 and 5 1978, as set forth in the affidavit, without reference to earlier observations, provided present probable cause to support the issuance of the search warrant, and we have also determined that the information contained in the affidavit, considered as a whole, reflects an ongoing criminal enterprise, and as a result, none of that information is "stale."

Accordingly, the Order of the lower court suppressing the evidence seized in the search is reversed and the case is remanded for trial.