467 A.2d 5

**COMMONWEALTH of Pennsylvania**

v.

**Ignacio C. ROSARIO, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1982.

Filed Oct. 14, 1983.

Richard J. Makoul, Allentown, for appellant.

216

Jane Roach, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for possession of a controlled substance and possession with intent to deliver a controlled substance. Appellant argues that he is entitled to a new trial because the search warrant under which the controlled substance in question was seized was invalid. We agree, and therefore reverse and remand for a new trial.

On October 15, 1979, a warrant was obtained to search appellant's residence. The affidavit in support of the request for the warrant alleged:

1. That during the past month (Oct. 5, 1979) we received a complaint that Carmelo Cruz a/k/a Ignacio Rosario is selling dope. (heroin) Nicknamed Fat Man.

2. That during the past, the affiant did receive information from a subject, which was relative to Controlled Substances.

3. That the aforementioned information was investigated by the affiant and was found to be reliable, true and correct to the best of his knowledge and belief.

4. That from the information received, mentioned in facts # 1 and # 2 and # 3 no arrests were made, however the reliability of the aforementioned subject had been established and the subject was now considered a reliable, confidential informant by the affiant.

5. That during the second week in October, 1979, the aforementioned confidential informant did enter the aforementioned premises at 2055 Oake Lane, Bethlehem, Pa. in the presence of Carmelo Cruz.

6. Upon entering the aforementioned premises the confidential informant did observe a quantity of white powder on the table, located in the basement of the home.

7. That the aforementioned Carmelo Cruz told the aforementioned confidential informant that the white powder in fact # 6 was in fact COCAINE which Carmelo Cruz referred to as "coke."

8. That the aforementioned information was given to the affiant by the confidential informant during the second week of October, 1979.

9. That Carmelo Cruz a/k/a FAT MAN is known by members of the vice squad as being a dealer in cocaine and maruhuana [sic].

10. That possession of cocaine and distribution are in violation of Act 64 unless statutory authority to order, prescribe or possess such drug is certified.

11. That the aforementioned Carmelo Cruz, FAT MAN, is not of that class of persons who is permitted by the Acts of Assembly to have in his possession and under his control such controlled substance.

12. That items are in violation of Act 64, Section 13(a), clause 30 Drug, Device Cosmetic Act.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court redefined the circumstances in which a magistrate may issue a search warrant based upon an anonymous informant's tip. The Court "abandon[ed] the 'two-pronged test' established by [its] decisions in *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964),] and *Spinelli* [*v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),]" in favor of "the totality of the circumstances analysis that traditionally has informed probable cause determinations." 462 U.S. at ——, 103 S.Ct. at 2332.

In *Aguilar* and *Spinelli,* the Court held that a search warrant based upon an anonymous informant's tip would survive constitutional scrutiny only if predicated upon a statement of: (1) the affiant's reasons for concluding that the informant was reliable; and (2) the underlying circumstances from which the informant inferred that the items to be seized would be found in the place to be searched. In *Gates,* the Court held that neither of these two statements

was a necessary predicate of a warrant based upon the tip of an anonymous informant. The Court emphasized, however, that both statements remain "highly relevant in determining the value of [an anonymous informant's] report." At ——, 103 S.Ct. at 2327. Under "the totality of the circumstances analysis .... [,] [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." At ——, 103 S.Ct. at 2332.

In *Gates*, a warrant to search the defendant's residence and car for drugs had been issued on the basis of an anonymous letter forwarded to the Bloomingdale, Illinois, Police Department and a detective's affidavit. The letter stated that "you have a couple in your town who strictly make their living on selling drugs." The letter also provided the couple's names and addresses—"They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums"—and described their *modus operandi* in some detail:

> Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.
>
> They brag about the fact they never have to work, and make their entire living on pushers.
>
> I guarantee if you watch them carefully you will make a big catch. They are friends with some big drugs dealers, who visit their house often.

Lance & Susan Gates
Greenway
in Condominiums"
At ——, 103 S.Ct. at 2325.

The detective's affidavit recited the corroborating informa-
tion obtained in the course of investigating the anonymous
informant's tip. At —— – ——, 103 S.Ct. at 2325–27. The
affidavit recited that upon learning that "an Illinois driver's
license had been issued to Lance Gates, residing ... in
Bloomingdale," and that "L. Gates" had reserved a flight
"to West Palm Beach, Fla., scheduled to depart from Chica-
go on May 5 at 4:15 p.m.," the detective set up a team of
Drug Enforcement Administration agents to conduct sur-
veillance at both ends of the flight to Florida on which
Gates had a reservation. The affidavit went on to recite
that the agents reported to the detective that Gates had
boarded the flight, arrived at West Palm Beach, and taken a
cab to a Holiday Inn, where he went to a room registered in
his wife's name, and that he left the motel the next morning
with an unidentified woman in a car bearing a Chicago
license plate number registered to another car owned by
Gates, and drove "northbound on an interstate frequently
used by travelers to the Chicago area." At ——, 103 S.Ct. at
2326.

In analyzing whether the search warrant issued in *Gates*
had been predicated upon probable cause, the Court con-
cluded that the totality of the circumstances described in
the anonymous letter and detective's affidavit warranted
the conclusion that there was probable cause to believe that
drugs would be found in the defendants' residence or car.
First, the Court said that

[e]ven standing alone, the facts obtained through the
independent investigation of Mader and the DEA at least
suggested that the Gates were involved in drug traffick-
ing. In addition to being a popular vacation site, Florida
is well-known as a source of narcotics and other illegal
drugs. See *United States v. Mendenhall,* 446 U.S. 544,
562 [100 S.Ct. 1870, 1881, 64 L.Ed.2d 497] (1980) (POW-
ELL, J., concurring); DEA, Narcotics Intelligence Esti-

mate, The Supply of Drugs to the U.S. Illicit Market From Foreign and Domestic Sources 10 (1979). Lance Gates' flight to Palm Beach, his brief, overnight stay in a motel, and apparent immediate return north to Chicago in the family car, conveniently awaiting him in West Palm Beach, is as suggestive of a pre-arranged drug run, as it is of an ordinary vacation trip.

At ——, 103 S.Ct. at 2334.

Second, the Court said that "the anonymous letter ... had been corroborated in major part by [Detective] Mader's efforts....", and that while the corroboration "may well not [have established] the type of 'reliability' or 'veracity' necessary to satisfy some views of the 'veracity prong' of *Spinelli,* .... [it] 'reduced the chances of reckless or pre-varicating tale,' thus providing 'a substantial basis for crediting the hearsay.'" At ——, 103 S.Ct. at 2335 (quoting *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). And finally, the Court said that "[t]he letter writer's accurate information as to the travel plans of each of the Gates was of a character [relating to future actions of third parties ordinarily not easily predicted] likely obtained only from the Gates themselves, or from someone familiar with their not entirely ordinary travel plans." At ——, 103 S.Ct. at 2335. From this "a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gates' alleged activities. [footnote omitted]" At ——, 103 S.Ct. at 2335.

Thus in examining the totality of the circumstances presented in *Gates,* the Court particularly emphasized three circumstances: (1) the issuing authority had information independent of the anonymous tip, specifically, a description of a local and federal investigation suggesting that the persons whose property was to be searched were involved in drug trafficking; (2) the issuing authority had information derived from that investigation that corroborated the anonymous tip, thereby tending to establish the informant's reliability; and (3) the informant's reliability was further established by the fact that the tip predicted that the

persons whose property was to be searched would behave in an unusual manner, which tended to show that the informant had direct or close access to information about their illegal activities.  Of these three circumstances, two are lacking here.

First, the issuing magistrate had no information independent of the anonymous tip upon which he could base a finding of probable cause.  The magistrate could not properly have relied on the statement in the affidavit "[t]hat during the past month (Oct. 5, 1979) we received a complaint that Carmelo Cruz a/k/a Ignacio Rosario is selling dope. (heroin) ..." for he was given no reason to credit this hearsay.  Nor did the affiant's statement that appellant was "known by members of the vice squad as being a dealer in cocaine and maruhuana [sic]" tend to establish probable cause to search his residence, for the affiant did not refer to the underlying factual basis for appellant's reputation among the police as a drug dealer.  In the absence of an explanation of the circumstances from which a defendant's reputation derives, an affiant's assertion about reputation can carry no more weight that any other bare conclusion, for the defendant's reputation may have had its origins in unsubstantiated speculation.  Thus the Court in *Gates* emphasized that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause;  his action cannot be a mere ratification of the bare conclusions of others."  At ——, 103 S.Ct. at 2332.  *Compare Spinelli v. United States*, 393 U.S. at 418, 89 S.Ct. at 590 (Mere allegation that defendant was "known" to FBI as a gambler was "simple asertion of police suspicion" that added no weight to otherwise insufficient allegations in support of search warrant) (overruled on other grounds) *with United States v. Harris*, 403 U.S. 573, 575, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723 (1971) (Fact that defendant had reputation with affiant "as being a trafficker of nontaxpaid distilled spirits" tended to establish reliability of anonymous informant where affiant alleged that reputation was based on fact that constable had "located a sizea-

ble stash of illicit whiskey in ... abandoned house under [defendant's] control ...." *and Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (Fact that defendant was known to police as drug user tended to establish reliability of informant where affiant alleged that he had personally observed needle marks on defendant's arm) (discussed with approval and distinguished from *Spinelli v. United States, supra,* in *United States v. Harris, supra* ). *Cf. Commonwealth v. Conner*, 452 Pa. 333, 339, 305 A.2d 341, 344 (1973) ("[A]ffiant's mere conclusion that appellant had 'a prior history of having carried firearms' is nothing '... but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's ... decision.' [quoting *Spinelli v. United States,* 393 U.S. at 414, 89 S.Ct. at 588]") (overruled on other grounds); *Commonwealth v. Emerich*, 225 Pa.Super. 163, 169, 310 A.2d 390, 392 (1973) (Where affiant alleged that police officer told him that defendant possessed drugs, but failed to set forth basis for officer's conclusion, allegation did not tend to establish informants' reliability); *Commonwealth v. Falk*, 221 Pa.Super. 43, 290 A.2d 125 (1972) (same).

Second, the issuing magistrate had no information that corroborated the anonymous informant's tip in any detail. Nor was any other basis for believing the informant's tip presented to the issuing magistrate. Cf. *Commonwealth v. Price*, 318 Pa.Super. 240, 464 A.2d 1320 (1983) (warrant sufficient under *Gates* where information was detailed and police corroborated crucial details.) There was no showing, for example, that the informant had provided reliable information in the past. The statement that "during the past, the affiant did receive information from a subject, which was relative to Controlled Substances" may not be regarded as a basis for finding the informant reliable. The provision of accurate information tends to establish reliability if the "information implicat[es] other persons in criminal activity ...." *Commonwealth v. Benjamin*, 260 Pa.Super. 1, 7, 393 A.2d 982, 985 (1978). *See also Commonwealth v.*

*White,* 311 Pa.Super. 146, 152, 457 A.2d 537, 539 (1983); *Commonwealth v. Minoske,* 295 Pa.Super. 192, 201, 441 A.2d 414, 419 (1982); *Commonwealth v. Chatman,* 275 Pa.Super. 5, 9, 418 A.2d 582, 585 (1980). Here, the statement that the information was "relative to Controlled Substances," does not implicate any other person. For all that appears, it might have been no more than a statement by the informant that he had used a controlled substance himself. In addition, it may be noted, the tip did not tend to establish the informant's veracity by virtue of being a declaration against his interest. *Commonwealth v. Ambers, supra.*

It may well be that the contents of the informant's tip here, as in *Gates,* suggested that the informant had reliable information about the presence of drugs at 2055 Oake Lane. However, applying the totality of circumstances test adopted in *Gates,* we conclude that this single circumstance was insufficient to warrant the conclusion that there was probable cause to search appellant's residence. The search warrant was therefore invalid and the fruits of the search should not have been introduced into evidence at appellant's trial. .

The judgment of sentence is vacated and the case remanded for a new trial.