476 A.2d 911

COMMONWEALTH of Pennsylvania, Appellant,

v.

Colleen Ann O'SHEA.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ciri Michael TANNHAUSER.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Danny Ira ROTH.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Hannu Olavi JOENSUU.

Superior Court of Pennsylvania.

Argued Feb. 1, 1984.

Filed April 27, 1984.

Reargument Denied June 29, 1984.

Petition for Allowance of Appeal Denied Feb. 7, 1985.

Charles W. Kirkwood, Assistant District Attorney, Stroudsburg, for Commonwealth, appellant.

John P. Lawler, Stroudsburg, for appellees.

Before SPAETH, President Judge, and BECK and HOFFMAN, JJ.

SPAETH, President Judge:

This is an appeal by the Commonwealth from an order suppressing evidence. Finding the affidavit on which the search warrant was issued sufficient to establish probable cause, we reverse and remand for trial.

Each of appellees, Tannhauser, Joensuu, O'Shea, and Roth, is charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, delivery of a controlled substance, and criminal conspiracy. The charges arise from a search of the Roth residence. The search was conducted pursuant to a warrant and led to the seizure of, *inter alia,* approximately 5,100 pounds of marijuana. Appellees moved to suppress the evidence on the ground that the affidavit on which the warrant was issued did not establish probable cause.

A hearing on the motion to suppress was held on September 29, 1981. Pursuant to Pa.R.Crim.P. 323(f), appellees requested that the hearing be held in private. The request was granted, and the transcript concludes with the statement that after an off-the-record discussion, "the reporter was advised by the Court that he would not be needed, that the remainder of the hearing would be in the form of arguments by counsel, all counsel agreeing, whereupon the reporter left...." After hearing argument, the trial court, by order dated September 30, 1981, ordered the evidence suppressed, holding in an opinion accompanying the order that the affidavit on which the warrant was

issued did not establish probable cause. The Common-wealth then filed this appeal. The record discloses that the suppression order substantially handicaps the Common-wealth's prosecution, for without being able to use the seized marijuana as evidence, the Commonwealth may well have no case. The appeal is therefore not interlocutory. *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983).

Following its appeal, the Commonwealth petitioned this court to remand the record to the trial court for a hearing. In its petition the Commonwealth alleged that a hearing had not been held on appellees' motion to suppress and that a hearing was necessary to establish: (1) that the trial court made a factual error in its opinion; (2) that appellees Tannhauser, Joensuu, and O'Shea had no standing to chal-lenge the search; (3) that probable cause did exist based on facts additional to those recited in the affidavit on which the warrant issued; and (4) that the police acted in good faith. By Per Curiam order dated February 18, 1982, this court granted the petition for remand, and pursuant to this order, the trial court conducted evidentiary hearings. Meanwhile, by Per Curiam order dated January 12, 1983, this court amended its order of February 18, 1982, to allow the trial court to make "such findings of fact and conclusions of law as it deems appropriate as the hearing tribunal." Pursuant to this amendment, the trial court by opinion dated June 6, 1983, made findings of fact and conclusions of law, and held that appellees Tannhauser, O'Shea, and Joensuu had no standing to challenge the validity of the warrant, that the police had probable cause to stop and search Joensuu, and that the execution of the warrant was illegal because there were no exigent circumstances to justify the failure of the police to knock and announce their presence before entering the Roth residence. Upon the Commonwealth's application for reargument and reconsideration, the court by opinion dated July 13, 1983, made additional findings of fact and conclusions of law, and held that the police had observed the knock-and-announce rule and that the search warrant

was legally executed. In an addendum to this opinion, the court, noting the United States Supreme Court's recent decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), concluded that considering the totality of circumstances and applying a common-sense approach, the police and the District Justice who issued the warrant "had a substantial basis to find that there was a 'fair probability' that there was [*sic*] contraband drugs in the Roth residence." The court then recommended that suppression of the seized marijuana be denied.

The Commonwealth argues—to state the argument generally—that this court should adopt the trial court's recommendation, and on the strength of it, vacate the court's earlier suppression order. This general argument divides into several arguments. With respect to appellees Tannhauser, Joensuu, and O'Shea, the Commonwealth argues that they lacked standing to challenge the search and that even if they had standing, the affidavit established probable cause. With respect to appellee Roth, the Commonwealth argues in the alternative: that the affidavit established probable cause; or that the totality of circumstances established probable cause; or that the exclusionary rule should not be applied in this case.

–1–

The Commonwealth argues that appellees Tannhauser, Joensuu, and O'Shea lacked standing to challenge the validity of the search because they were "simply visitors" at the Roth residence and therefore had no reasonable expectation of privacy there. *See United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The Commonwealth first raised this issue in its petition to this court seeking a remand for a hearing on the suppression motion. Appellees argue that the Commonwealth bears the burden of proof on this issue and therefore waived any objection to appellees' standing by not raising the issue at the September 29, 1981, hearing on the suppression motion. Alternatively, appellees argue that the evidence produced on remand was sufficient to prove their standing. The Common-

wealth argues that appellees bear the burden of proving their standing to challenge the search and that it was therefore their burden to offer evidence on the issue at the September 29, 1981, hearing. Alternatively, the Commonwealth argues that the evidence introduced on remand proved that appellees had no standing.

We need not resolve the dispute about waiver and burden of proof. In *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), our Supreme Court held that a defendant accused of a possessory crime will continue to have "automatic standing" under Article I, section 8, of the Pennsylvania Constitution to challenge the admissibility of evidence alleged to be the fruit of an illegal search. In so holding, the Court declined to follow the United States Supreme Court's decision in *United States v. Salvucci*, *supra*, in which that Court abolished "automatic standing" under the federal constitution. Since appellees have been charged with possessory offenses, they are entitled to "automatic standing" under the Pennsylvania Constitution to maintain a motion to suppress.

–2–

In considering the Commonwealth's argument that the affidavit established probable cause for the issuance of a warrant to search the Roth residence, we shall not repeat verbatim all fourteen paragraphs of the affidavit, for that would serve no useful purpose. The averments of the affidavit are substantially as follows:

1. Affiant is a state police officer asssigned to Region 1 Narcotics Strike Force since 1975.
2. Affiant is familiar with operations of drug smugglers and distributors.
3. During surveillance by affiant and Cpl. Edward Long, Jack Callahan, Herbert Bailey, Hanna Joensuu and Tony Lemisch were observed at the Roth residence.

4. A records check by affiant showed that all persons named in paragraph 3 as having been observed at the Roth residence had been previously arrested for drug violations.

5. Confidential source informed affiant on July 7, 1981, that a Ryder truck had been rented in Miami, Florida, on June 26, 1981, to Leslie Morris of 544 Sylvan Cascade Rd., and would be returned to a Ryder agent on July 4, 1981, in Stroudsburg, PA.

6. Two confidential sources informed Trp. James McAndrew on July 7, 1981, that the Ryder truck was observed at 544 Sylvan Cascade Road on July 1, 1981.

7. On July 6, 1981, an unidentified woman telephoned the Ryder agent and said the Ryder truck was not yet unloaded and wouldn't be returned for a couple of days.

8. A confidential source told affiant on July 6, 1981, that a Ryder truck driven by a white female had arrived at the Roth residence at 1530 hours.

9. Affiant and other officers then conducted continuous surveillance of the Roth residence and the Ryder truck and observed no activity for about 30 hours.

10. Two vehicles arrived at the Roth residence on July 7, 1981, at 2200 and 2230 hours, one operated by Joensuu; the Ryder truck was then unloaded, the unloading taking about an hour, and the contents were taken inside the Roth residence.

11. [We do quote this paragraph verbatim, for as will appear, it is crucial to the inquiry on probable cause.] At approximately 0030 hours a vehicle was observed leaving the residence at RD # 6 Stroudsburg, Pa. [the Roth residence]. This vehicle was surveilled and stopped a short time later. At this time approximately two ounces of suspected marijuana was observed in the back seat of the vehicle, which the affiant believes to be a sample of marijuana, and part of a shipment of marijuana which

arrived in the previously mentioned Ryder truck. As a result of this seizure of marijuana the operator, Hannu JOENSUU, 310 North West First Ave., Boyton Beach Florida was arrested for violation of the Controlled Substance Drug Device and Cosmetic Act, Act 64.

12. Joensuu was convicted for selling a large amount of marijuana to undercover agents from Florida in 1977.

13. Affiant knows that large amounts of marijuana are smuggled into Miami, Florida, and the above facts constitute drug smuggling.

14. Affiant requests nighttime search.

"Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched." *Commonwealth v. Council*, 491 Pa. 434, 443, 421 A.2d 623, 627 (1980) (citations omitted). "[W]here a magistrate has found probable cause to issue a search warrant, we should not, as a reviewing court invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a common sense manner .... Rather we must test and interpret the affidavit in a realistic fashion, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *Commonwealth v. Nycz*, 274 Pa.Super. 305, 312, 418 A.2d 418, 422 (1980) (citations omitted). Applying these principles to the above affidavit, we conclude that the affidavit was sufficient to establish probable cause.[1]

**1.** Although the Commonwealth argues that the trial court changed its mind regarding the sufficiency of the affidavit, and that this change of mind led to the court's recommendation in its opinion of July 13, 1983, that suppression be denied, it is clear from the court's opinion that its recommendation was based on its consideration of facts that were not a part of the affidavit but were shown by testimony on remand. The court prefaced its recommendation with the statement: "Considering the totality of the circumstances as detailed in our Findings of Fact...." When in its original opinion, of September 30, 1981, the court considered only the affidavit, it found the affidavit

112

Paragraphs 1 and 2 of the affidavit identify the affiant. Paragraphs 3, 4 and 12 aver that four persons, "previously arrested for drug violations", were seen at the Roth house; one of them "was convicted for selling a large amount of marijuana to undercover agents from the state of Florida in 1977." Paragraphs 5 through 10 and Paragraph 13 aver that a Ryder truck was rented in Miami, Florida; that large amounts of marijuana are smuggled into Miami; and that the truck was unloaded late in the evening at the Roth residence and the contents of the truck taken inside the house.[2] These averments were insufficient to establish probable cause; nothing in them indicated that there was any marijuana in the truck or in the Roth residence.

In *Commonwealth v. Davis*, 225 Pa.Super. 242, 310 A.2d 334 (1973), we held the following averments insufficient to establish probable cause to search a house: (1) numerous visits by individuals reputed to be narcotics pushers; (2)

insufficient to establish probable cause, and therefore entered the suppression order here at issue.

**2.** Paragraphs 5 through 8 all refer to information received from unidentified sources. Appellees argue that the affidavit does not contain averments sufficient to credit these sources and their information as reliable under the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court rejected the two-prong test of *Aguilar* and *Spinelli* and reaffirmed a totality of circumstances analysis, which was adopted and applied retroactively by this court in *Commonwealth v. Price*, 318 Pa.Super. 240, 464 A.2d 1320 (1983). *See also Commonwealth v. Rosario*, 320 Pa.Super. 215, 467 A.2d 5 (1983) (in examining totality of circumstances, court considers: (1) information independent of anonymous tip, (2) information corroborating tip, and (3) content of tip). Here we need not decide whether the unidentified sources and their information were reliable. We may assume, as appellees argue, that they were not reliable, for as will be discussed, the sufficiency of the affidavit depends on averments of what the officers themselves saw, and an issuing authority may assume the reliability of an officer. *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *United States v. Various Gambling Devices*, 478 F.2d 1194, 1200 (5th Cir.1973).

appellant's reputation as a narcotics pusher and recent arrest on a narcotics charge; (3) a visit by an individual in a dump truck who gave a package to appellant's wife who carried it to the house under her coat; and (4) a change of license plates from appellant's to a different car. We noted that carrying a package into a house under a coat is consistent with innocent intentions. The same may be said of the fact that a truck from Miami, Florida, was unloaded late in the evening; also, further consistent with innocence, nothing in the affidavit indicates that those unloading the truck attempted to conceal the contents of the truck or their activities. The fact that there were persons at the residence who had been arrested or convicted for drug violations no doubt made the officers suspicious, but it gave them no probable cause to search the house. *Commonwealth v. Dial*, 218 Pa.Super. 248, 276 A.2d 314, *aff'd. in part and rev'd. in part on other grounds*, 445 Pa. 251, 285 A.2d 251 (1971). "A suspicion, no matter how strong, does not amount to probable cause." *Commonwealth v. Davis, supra*, 225 Pa.Super. at 246–47, 310 A.2d at 337.

The crucial paragraph of the affidavit, as we have remarked, then, is paragraph 11, in which the stop of appellee Joensuu's car and the arrest of Joensuu are described. (Joensuu was the individual identified in paragraph 12 as having been convicted in 1977 of selling a large amount of marijuana.) This is the only part of the affidavit that goes beyond general descriptions of suspicious activity.

It appears from the trial court's opinion of September 30, 1981, that the court erroneously believed that the stop of Joensuu was made pursuant to the affidavit and warrant at issue. Thus the court stated that the affidavit was insufficient to establish probable cause to believe that Joensuu's car contained incriminating evidence or was involved in criminal activity, and that therefore the stop was illegal and any evidence obtained by the stop was tainted. However, the legality of the stop is not at issue; indeed, we may

assume that the stop was illegal.[3]  What is at issue is the sufficiency of the affidavit.

■  We have already discussed most of the paragraphs of the affidavit, and have characterized them as justifying no more than a suspicion that the persons unloading the Ryder truck and transferring its contents into the Roth residence were engaged in some sort of illegal activity. After considerable reflection, and we acknowledge with some hesitancy, we have concluded that when the averments of paragraph 11 of the affidavit are considered, this suspicion rises to the level of probable cause.

The affidavit is certainly inarticulate and awkwardly worded, and we have a good deal of sympathy with the trial court's conclusion that it was insufficient.  Nevertheless, the affiant, a State trooper, did say in paragraph 11 that he "believe[d] [the two ounces of marijuana found in Joensuu's car] to be a sample of marijuana, *and part of a shipment of marijuana which arrived in the previously identified Ryder truck.*"  (Emphasis added.)  Admittedly, this may be read as averring no more than a guess, and a not particularly logical guess at that:  Simply because marijuana is found in a car is no reason to suppose it came from a truck.  In other words, who is to say that the marijuana wasn't in Joensuu's car all along?  But when this point has been made, the fact remains that the trooper referred to "a shipment of marijuana which arrived in the previously mentioned Ryder truck."  The phrase "previously mentioned" takes one back to paragraph 10 of the affidavit, where it is averred that the Ryder truck was unloaded, the unloading

3.  Appellee Joensuu argues that the stop was illegal and that therefore the fruits of the stop must be suppressed.  However, he was not charged with an offense on the basis of the marijuana seized in the stop, and he did not move for the suppression of this evidence.  In addition, even if the stop was illegal, the evidence seized in the search of the Roth residence was not the fruit of the stop.  As stated, *supra* n. 2, the search was conducted pursuant to the warrant, the sufficiency of which turns not on the averments regarding the stop but on the averments of what the officers themselves saw.  *See Commonwealth v. Cosby,* 234 Pa.Super. 1, 335 A.2d 531 (1975) (inclusion of illegally obtained evidence does not invalidate warrant based on other sources that are valid and sufficient to constitute probable cause).

taking about an hour, and the contents were taken inside the Roth residence, and to paragraph 9, where the trooper identifies himself as one of a group of officers who conducted a continuous surveillance of the Roth residence and of the Ryder truck. Fairly read, which is to say, in a "common sense ... realistic fashion," and resolving a "doubtful" case "by the preference to be accorded to warrants," *Commonwealth v. Nycz, supra,* we think that what the affiant meant to say, and should be understood as saying, is that he saw a shipment of marijuana being unloaded from the Ryder truck into the Roth residence. *Cf. Commonwealth v. Chumley,* 482 Pa. 626, 394 A.2d 497 (1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979) (motion to suppress based on theory that affidavit should have alleged that markings "were" identical rather than that affiant "believed" markings were identical would have been meritless). Why he didn't say so in so many words is a puzzle, probably explained by self-consciousness in writing what the affiant regarded as a legal document, with a consequent resort to stilted language. However that may be, we are satisfied as to the intended meaning. With this conclusion, decision is easy; for a police officer's affidavit that he saw marijuana being unloaded into a house is plainly probable cause to issue a warrant to search the house.

–3–

The Commonwealth also argues with respect to appellant Roth that even if the affidavit was insufficient to establish probable cause, the totality of circumstances known to the police, as established by the evidence produced on remand, shows that the police officers in fact had probable cause to search the Roth residence.[4] Strictly speaking, we need not consider this argument, for we have held the affidavit sufficient. We recognize, however, that evidence was produced on remand, and that the trial court has made findings

---

4. Although the Commonwealth does not expressly make this argument with respect to appellees Tannhauser, O'Shea and Joensuu, it implicitly makes it when, in the course of its argument that the affidavit was sufficient to establish probable cause, it refers to facts developed on remand but not recited in the affidavit.

of fact and filed a supplemental opinion based on that evidence. In these circumstances, we shall consider whether the evidence produced on remand was admissible on the issue of probable cause.

■ The evidence was not admissible, and we have not considered any of it. In retrospect we observe that our remand for the taking of evidence was improvidently issued. Pa.R.Crim.P. 2003(b) provides that in any hearing on a motion for suppression of evidence obtained pursuant to a search warrant, "no evidence shall be admissible to establish probable cause other than the affidavits" sworn to before the issuing authority. *See also Commonwealth v. Ryan,* 268 Pa.Super. 259, 407 A.2d 1345 (1979), *remanded,* 489 Pa. 221, 414 A.2d 37 (1980) (for clarification of order), *on remand,* 277 Pa.Super. 262, 419 A.2d 762 (1980) (remanded for new suppression hearing) (court cannot go outside four corners of affidavit in deciding whether probable cause existed, although it is Commonwealth's burden to introduce evidence to prove validity of statements therein if challenged by defendant). The search of the Roth residence was conducted pursuant to a warrant.[5] The Commonwealth, therefore, may not go outside the averments in the affidavit to establish the existence of probable cause and the validity of the warrant.

–4–

■ With respect to appellee Roth, the Commonwealth argues that even if the affidavit was insufficient and the search was therefore illegal, the exclusionary rule should be modified and the evidence should not be suppressed in this case. Again, strictly speaking we need not consider this argument, but we nevertheless shall consider it because the Commonwealth has pressed it with great vigor—we assume because it recognizes that the affidavit is marginal. The Commonwealth's argument is in two parts. First, the Commonwealth argues that the evidence should not be sup-

5. The Commonwealth does not argue that it was entitled to search the residence in the absence of a warrant.

pressed because the police acted in the reasonable and good faith belief that they had a valid warrant. Second, the Commonwealth argues that the evidence should not be suppressed because the magistrate erred in issuing the search warrant and that error was not the result of police misconduct. The Commonwealth argues that if the magistrate had properly refused to issue a warrant on the basis of the affidavit in question, the officers, since they actually had probable cause, would have been able to supplement the affidavit to make it sufficient to establish probable cause on its face.

These arguments are also without merit. Although the exclusionary rule may in the future be modified by the United States Supreme Court, the Court has yet done so, and this court is bound to apply the exclusionary rule as it now exists under the decisions of the Pennsylvania and United States Supreme Courts. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (evidence seized in violation of defendant's rights under the fourth amendment to the United States Constitution must be suppressed by state courts); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (evidence seized in violation of defendant's rights under Article I, section 8 of Pennsylvania Constitution must be suppressed).

The order of the trial court is reversed and the case is remanded for trial.

Jurisdiction is relinquished.

HOFFMAN, J., files a dissenting opinion.

Before SPAETH, President Judge, and BECK and HOFFMAN, JJ.

HOFFMAN, Judge, dissenting:

The majority finds the affidavit on which the search warrant was issued sufficient to establish probable cause. Because I believe that the affidavit established only the suspicion of illegal activity, I must dissent.

118

My disagreement stems from the majority's interpretation of paragraph 11 of the affidavit, which avers:

11. At approximately 0030 hours a vehicle was observed leaving the residence at RD # 6 Stroudsburg, Pa. [the Roth residence]. This vehicle was surveilled and stopped a short time later. At this time approximately two ounces of suspected marijuana was observed in the back seat of the vehicle, *which the affiant believes to be a sample of marijuana, and part of a shipment of marijuana which arrived in the previously mentioned Ryder truck.* As a result of this seizure of marijuana the operator, Hannu JOENSUU, 310 North West First Ave., Boyton Beach Florida was arrested for violation of the Controlled Substance Drug Device and Cosmetic Act, Act 64.

(Emphasis added). The majority interprets the above-emphasized portion to mean "that what the affiant meant to say, and should be understood as saying, is that he *saw* a shipment of marijuana being unloaded from the Ryder truck into the Roth residence." (Majority Opinion at 16) (emphasis added). In reaching this conclusion, the majority refers to paragraph 10 of the affidavit, where it is averred that the Ryder truck was unloaded and the contents taken inside the Roth residence, and to paragraph 9, where the affiant identifies himself as one of a group of officers who conducted a continuous surveillance of the Roth residence and the Ryder truck. In paragraphs 9 and 10, however, the affiant never identifies the contents of the Ryder truck as a shipment of marijuana. The majority characterizes the affiant's failure to expressly say that he saw a shipment of marijuana being unloaded as "a puzzle" but explains such failure to be the result of "self-consciousness in writing what the affiant regarded as a legal document". (Majority Opinion at 16).

I do not find the affiant's failure to identify the contents of the Ryder truck puzzling. The affiant did not identify the contents of the Ryder truck in paragraph 10 because he *could not.* Had he *seen* a shipment of marijuana being

unloaded from the truck, he could have easily—and probably would have—said so in the affidavit. With regard to the above-emphasized portion of paragraph 11, I think it is clear that the affiant was merely making a personal speculation or guess as to the source of the suspected marijuana found in the vehicle. Hence, I cannot accept the majority's strained interpretation of paragraph 11, which I deem to be an unsupported assumption.

The majority concedes that the other averments in the affidavit establish only a suspicion of illegal activity occurring at the Roth residence. *See Commonwealth v. Davis*, 225 Pa.Super. 242, 246–47, 310 A.2d 334, 337–38 (1973) ("A suspicion, no matter how strong, does not amount to probable cause[.]"). Accordingly, because I disagree with the majority's conclusion that paragraph 11 raises this suspicion to the level of probable cause, I would affirm the suppression order.

I dissent.