## Commonwealth v. Zeigler

*Mark S. Miller, assistant district attorney,* for the commonwealth.

*Glenn A. Zeitz* and *George C. Brady III,* for defendant.

VOGEL, *P.J.,* March 6, 1990 — On or about February 10, 1989, a search warrant issued by a district justice was executed at the residence of the defendant, George Zeigler, 107 Hancock Place, North Wales, Pennsylvania, at which time certain suspected drugs and drug paraphernalia were seized whereby defendant was charged with a violation of the Controlled Substance, Drug, Device and Cosmetic Act.

An appropriate motion to suppress was filed on October 12, 1989, and after hearing and oral argument on January 3, 1990, January 31, 1990, and February 6, 1990 we sustained the same by our order of February 6, 1990 for the reasons set forth on the record at that time. On February 8, 1990, the commonwealth appealed to the Superior Court since said ruling effectively dissolved its case. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). Hence this opinion.

At the hearing of January 3, 1990, it was stipulated between the parties that the sole issue at hand was the validity of application for search warrant and affidavit, hereafter referred to as affidavit, of February 10, 1989, taken by the affiant, Trooper Dennis Rodriques, of the Pennsylvania State Police. No witnesses were called to testify and while the said affidavit speaks for itself, the following relevant facts are set forth.

The affiant received information from a member of the New Jersey Narcotic Strike Force, Sgt. Ed-

ward Hoffman, Ocean County, that in the last week of November 1988, an undercover agent purchased an ounce of cocaine from one Walter Joseph Kinley, at the New Jersey residence of defendant, located at Mystic Island, Little Egg Harbor Township, New Jersey. The affiant received further information on February 6, 1989, from Trooper Hoffman that at a diner, Vincenttown Diner, Burlington County, New Jersey, an undercover agent of Ocean County purchased two ounces of cocaine from defendant Walter Kinley and a white male known as Mark. The individuals were operating a 1986 blue Chrysler which showed ownership to defendant's wife, Fay L. Zeigler, 107 Hancock Place, North Wales, Pennslylvania, with registration NSM064.

At the request of New Jersey authorities, a surveillance was placed on defendant's home on February 6, 1989, and at 0100 hours the three white males, as described by dress, were seen exiting from a light-blue Chrysler bearing registration NSM064. At 0150 the individual identified as Mark exited the house, entered a red Camaro and exited the same. A continued surveillance of the scene showed three other vehicles which showed ownership to defendant and Fay L. Zeigler. The affiant was also advised by Hoffman that Zeigler had a New Jersey driver's number not current with the Lansdale address.

A check of the criminal history of Kinley showed he had a record which included 21 arrests, 15 of them drug-related, in New Jersey at which time all drug transactions used prerecorded serialized money.

On February 9, 1989 the affiant received information that Zeigler made arrangements with an undercover agent of Ocean County to deliver five ounces of cocaine at Mayo's Restaurant Lounge,

Burlington County, New Jersey, at 1900 hours on February 10, 1989. After receiving this information the affiant set up a surveillance at defendant's residence on February 10, 1989, and at 1750 hours that day observed Zeigler arrive at the residence. After a few minutes in the residence he was observed leaving with Kinley at 1759 hours and left in the light-blue Chrysler NSM064. Surveillance followed them to New Jersey and at 2025 the affiant received information that at 2015 hours Zeigler and Kinley were arrested by Ocean County detectives for drug violations. Found in their possession were five ounces of cocaine.

In reviewing the affidavit in the present proceeding and the facts asserted within, it has been hornbook law that the court must look to the four corners of the affidavit. *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981). As stated in *Commonwealth v. O'Shea,* 328 Pa. Super. 104, 476 A.2d 911 (1984):

"Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched." *O'Shea* at 111, 476 A.2d at 915.

While item (1) is satisfied, it is item (2) which is fatally defective in the present proceeding based on the holdings of *Commonwealth v. Way,* 342 Pa. Super. 341, 492 A.2d 1151 (1985); *Commonwealth v. Kline,* 234 Pa. Super. 12, 335 A.2d 361 (1975); and *Commonwealth v. Davis,* 225 Pa. Super. 242, 310 A.2d 334 (1973).

Initially, in the *Davis* case, *supra,* numerous visits to the home of the defendant by "four individuals throughout January and February 1969 who were reputed to be narcotics pushers, one of whom

was from Columbus, Ohio" as well as a visit by an individual who gave a package to appellant's wife who carried it into the house under her trench coat, along with other factors including the appellant's "recent arrest on a narcotics charge" was held to be insufficient to sustain an affidavit, as stated by Judge Hoffman:

"In *Commonwealth v. Dial,* 218 Pa. Super. 248, 276 A.2d 314 (1971), we held that the mere detailing of an accused's previous arrests for narcotics violations plus the occurrence of numerous meetings between an accused and known narcotics dealers and users was an insufficient basis from which a magistrate could conclude that the accused was in possession of narcotics. Similarly, in *Commonwealth v. Prasnikar,* 221 Pa. Super. 469, 292 A.2d 420 (1972), we held that such information did not afford a reasonable inference that criminal conduct existed, and could not, therefore, provide a sufficient basis for probable cause to issue a warrant. See *Sibron v. New York,* 392 U.S. 40, 62, 88 S.Ct. 1889, 1902 (1967); *Spinelli v. United States,* 393 U.S. 410, 414, 89 S.Ct. 584, 588 (1969)." *Davis* at 245, 310 A.2d at 336.

Further, just as the affiant in the present proceeding might have a strong suspicion that the defendant and Kinley were engaged in criminal activity, such does not rise to probable cause. As stated in the *Davis* case, *supra:*

"We agree with the commonwealth's argument that such activity is not of an outwardly innocent character. We do not believe, however, that this fact is one which indicates a probability that drugs were present on the premises on the night the warrant was issued." *Davis* at 246, 310 A.2d at 337.

Again, in *Commonwealth v. Kline, supra,* decided by His Honor, Judge Spaeth, the Superior Court

184

sustained the defendant's motion to suppress evidence which case seems to be even stronger than the initial proceeding. In that proceeding, along with other facts learned from an informant, two girls told police "they knew this person named Morgan Arthur who lives above the Junction Inn at Ninth and Robinson St[reets] and they knew that he was selling drugs. They asked him for some LSD and he went to his [apartment] at Ninth and Robinson and returned a few minutes later with two 'Hits' of 'Blotter Acid.' (LSD on small pieces of paper)." *Kline* at 14, 335 A.2d at 362.

As stated at page 17, 335 A.2d at 364:

"There is no indication of where the transaction took place, how long it took, how long Arthur was gone, or what led the girls to conclude that he had gone to his apartment. The information from the confidential informant does not corroborate their conclusion that Arthur kept drugs in his apartment, even though it does tend to establish that Arthur was a drug dealer.

*"Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.* Judge Hess stated the matter well in his memorandum opinion: 'In our opinion an allegation based on an assumption or supposition not supported by the facts is insufficient to support [an inference of] criminal activity in a premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.' " (emphasis supplied)

Just as Judge Spaeth relied on Judge Hess's statement, this court does the same in the present proceeding. As stated, requirement no. 2 "that the items will be found in the place to be searched" must fall. Indeed, unfortunately for the common-

wealth, there is no *nexus* or tie between Zeigler's alleged drug dealing in the State of New Jersey and criminal activity in his private home in Lansdale, Pa.

A review of the facts in the third case upon which this court relies, *Commonwealth v. Way, supra,* sets forth facts which once again would appear to be even stronger for the commonwealth than the instant proceeding. There, along with the customary surveillance, following the defendant to the residence at a particular intersection, an informant, Missimer, advising the police "that she has obtained methamphetamines on a number of occasions" as well as purchasing some from him on this particular occasion for $130 when he was followed to his residence at the northeast corner of Douglas and Glendale Roads by the police, the informant, Missimer, stated she would even "contact Way via telephone [telephone number] and would meet at a prearranged location for the drug transaction," such averments were not sufficient and the evidence suppressed.

The Superior Court, in a well reasoned opinion by His Honor, Judge Olszewski, determined, even with a phone number supplied, which is *not* in our case, there was an illegal search and set forth once again the established principles which guide the undersigned:

"Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.

"The instant case is controlled by this court's decision in *Commonwealth v. Kline,* 234 Pa. Super. 12, 335 A.2d 361 (1975). There Judge Spaeth, writing for the majority, affirmed an order suppressing evidence obtained pursuant to a search warrant. The court reasoned that, even though the affidavit

contained facts sufficient to establish an individual was dealing in drugs, it failed to establish that the individual kept the drugs in his apartment. In *Kline,* the informants stated 'they [had] asked him for some LSD and he went to his apartment at Ninth and Robinson and returned a few minutes later with two "hits" of "blotter acid" (LSD on small pieces of paper).' 234 Pa. Super. at 14, 335 A.2d at 362. The *Kline* court considered that statement:

" '[A]s far as appears from the affidavit, none of the informants said where the LSD was. The girls apparently concluded that it was in Arthur's apartment. However, an affidavit must set forth how information leading to such a conclusion was obtained. *Commonwealth v. Ambers,* 225 Pa. Super. 381, 310 A.2d 347 (1973); *Commonwealth v. Soychak,* 221 Pa. Super. 458, 289 A.2d 119 (1972).' 234 Pa. Super. at 17, 335 A.2d at 364.

. . .

"In the case at bar, *the lack of a substantial nexus between the street crime and the premises to be searched renders the warrant facially invalid.*" *Way* at 347, 492 A.2d at 1154. (emphasis supplied)

The commonwealth's possible reliance in the instant proceeding on *Commonwealth v. Frye,* 242 Pa. Super. 144, 363 A.2d 1201 (1976) is misplaced. There the nexus to the defendant's premises was firmly established by the defendant himself giving his home phone number to a third party and as stated by Judge Cercone in that case cited and distinguished in *Way, supra:*

" '[T]he nexus between the evidence to be seized and the place to be searched was provided by Frye's admission that he was conducting at least part of his unlawful operations from his home.' *Id.,* [242 Pa.

Super.] at 149, 363 A.2d at 1204." *Way* at 348, 492 A.2d at 1154.

Finally, we are cognizant that the commonwealth may seek to argue the "good-faith" exception to the exclusionary rule for improperly seized evidence relying on *United States v. Leon,* 468 U.S. 897 (1984). However, this court relies on the decision of *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989) in rejecting such contention in that proceeding:

"We leave for another day and another differing set of facts to determine whether a good-faith exception will be read into the law of this jurisdiction."

Thus, while the establishment of a "good-faith" exception must rest with a higher authority, this court would be lax in failing to state that in its opinion the "good-faith" exception must fall in the instant case. Simply stated, to adopt the same and permit a search of defendant's premises where, as set forth by our opinion, the affidavit is woefully lacking in probable cause would be making a mockery of the *Way, supra; Kline, supra,* and *Davis, supra,* decisions and significantly erode Article I, section 8 of the Pennsylvania Constitution.

Accordingly; our order of February 6, 1990, should be affirmed.